[Cite as *State v Ward*, 2011-Ohio-254.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**               **CASE NO. 13-10-11**

    **v.**

**ROBERT L. WARD,**                    **O P I N I O N**

    **DEFENDANT-APPELLANT.**

---

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 09 CR 0284**

**Judgment Affirmed**

**Date of Decision: January 24, 2011**

---

**APPEARANCES:**

    *Drew A. Hanna* **for Appellant**

    *Rhonda L. Best* **for Appellee**

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Robert Ward, appeals from the judgment of the Court of Common Pleas of Seneca County sentencing him to a prison term of ten years and six months, imposing an eight-year license suspension, and ordering $1,213.30 in restitution to the Seneca County Drug Task Force METRICH Enforcement Unit. On appeal, Ward argues that the trial court erred in convicting him of multiple offenses of trafficking in drugs where those offenses were allied offenses of similar import; in allowing the introduction of laboratory reports of evidence where a chain of custody for the evidence was not established; in considering the State's unproven and prejudicial statements and allowing the improper introduction of his prior convictions at sentencing; and, in sentencing him to maximum, consecutive sentences. Based on the following, we affirm the judgment of the trial court.

{¶2} In December 2009, the Seneca County Grand Jury indicted Ward on Count One: trafficking in drugs in violation of R.C. 2925.03(A)(1),(C)(2)(a), a felony of the fifth degree; Count Two: aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1),(C)(1)(a), a felony of the fourth degree; Count Three: aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1),(C)(1)(a), a felony of the fourth degree; Count Four: aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1),(C)(1)(a), a felony of the fourth degree; Count

Five: trafficking in drugs in violation of R.C. 2925.03(A)(1),(C)(2)(c), a felony of the fourth degree; Count Six: trafficking in marijuana in violation of R.C. 2925.03(A)(1),(C)(3)(b), a felony of the fourth degree; Count Seven: trafficking in marijuana in violation of R.C. 2925.03(A)(1),(C)(3)(b), a felony of the fourth degree; Count Eight: trafficking in marijuana in violation of R.C. 2925.03(A)(1),(C)(3)(b), a felony of the fourth degree; and, Count Nine: complicity to trafficking in marijuana in violation of R.C. 2925.03(A)(1),(C)(3)(b) and R.C. 2923.03(A)(2),(F), a felony of the fourth degree. The details included in the indictment were as follows: Count One involved the sale of Hydrocodone, a Schedule III controlled substance, on February 11, 2009; Count Two involved the sale of Oxycodone, a Schedule II controlled substance, on February 11, 2009; Count Three involved the sale of Codeine, a Schedule II controlled substance, on February 11, 2009; Count Four involved the sale of Oxycodone, a Schedule II controlled substance, on February 12, 2009; Count Five involved the sale of Hydrocodone, a Schedule III controlled substance, on February 19, 2009; Counts Six, Seven, and Eight involved the sale of marijuana on March 29, 2009; and, Count IX involved the sale of marijuana on March 30, 2009. The indictment arose from multiple controlled buys between Ward and a confidential informant over the course of two months.

**{¶3}** In January 2010, Ward entered a not guilty plea to all counts in the indictment.

**{¶4}** In March 2010, the case proceeded to a jury trial, at which Detective Charles Boyer with the Tiffin Police Department testified that he assisted in conducting a controlled drug purchase involving Ward and a confidential informant on February 11, 2009; that the confidential informant purchased from Ward one Oxycontin tablet, four Vicodin tablets, and fourteen Tylenol III's; that he bagged and labeled the drugs collected from the confidential informant and transported them to the evidence room in the Tiffin Police Department to await testing at the Bureau of Criminal Identification and Investigation ("BCI"); that there could have been twelve and not fourteen Tylenol III's, but there were three different substances recovered; that he assisted in another controlled purchase involving Ward on February 12, 2009, in which the confidential informant purchased drugs from Ward; that he assisted in three separate controlled purchases involving Ward on March 29, 2009; that he assisted in a controlled purchase involving Ward on March 30, 2009; that the confidential informant purchased one ounce of marijuana from Ward on that day; and, that he received the marijuana from the confidential informant after the purchase, placed it into a plastic bag, initialed it, and dated it.

{¶5} Subsequently, Detective Boyer indentified evidence submittal sheets from the February 11, February 12, February 19, March 29, and March 30, 2009 purchases that indicated the various prescription drugs and marijuana were given to either Detective Shawn Vallery, Officer David Horn, or Detective Don Joseph for transportation to BCI for analysis. Detective Boyer further testified that all evidence submittal sheets are taken with the drugs to BCI; that, after the drugs have been analyzed, an officer picks up the drugs and receives the evidence submittal sheet back from BCI; and, that all evidence submittal sheets in this case had been in the police department's custody since they were received back from BCI.

{¶6} Furthermore, Detective Boyer testified regarding the drugs obtained during the February 11, February 12, February 19, and the three March 29 purchases that he received the drugs from Detective Armstrong, placed them in the evidence room, and received them back directly from the transporting officer after they had been analyzed by BCI, and that he also received the drugs from the March 30 purchase, sealed them in an evidence bag, and received them back after they had been analyzed by BCI.

{¶7} Detective Matthew Armstrong of the Fostoria Police Department testified that the analysis from BCI revealed that the Vicodin tablets purchased from Ward contained Hydrocodone, the Tylenol tablets contained Codeine, and

the Oxycontin tablet contained Oxycodone; that the Percocet tablets purchased on February 12, 2009, were found by BCI to contain Oxycodone; that the drugs purchased in all three instances on March 29, 2009, were found by BCI to be marijuana; that a controlled purchase involving Ward was made on February 19, 2009; that, during this incident, the confidential informant purchased Percocet tablets from Ward; that, after the purchase, he took the pills from the confidential informant, placed them into an evidence bag, and turned them over to Detective Boyer; and, that a subsequent testing of the pills by BCI revealed them to contain Oxycodone.

{¶8} Additionally, Detective Armstrong testified that he collected the drugs purchased by the confidential informant during the February 11, February 12, and March 29 operations; that he placed those drugs into evidence and labeled them; that he gave all the drugs to Detective Boyer, with the exception of the drugs purchased during the first operation on March 29, which he gave to Detective Joseph; and, that after the drugs that were purchased on February 11 and 12 were analyzed by BCI, he transported them back to the evidence room.

{¶9} Detective Shawn Vallery of the Tiffin Police Department testified that he transported four evidence bags to the BCI office in Bowling Green for analysis, and that he was given those bags by Detective Boyer. Additionally, he

indentified four evidence submittal sheets he was given when he transferred the evidence to BCI.

{¶10} Detective David Horn of the Tiffin Police Department testified that he transported two evidence bags to the BCI office in Bowling Green for analysis; that Detective Boyer gave him those two bags; and, that he also transported the evidence bags back to the police station and gave them to Detective Boyer. Detective Horn additionally identified two evidence submittal sheets he was given by BCI when he transferred the evidence bags to them.

{¶11} Detective Donald Joseph of the Seneca County Sherriff's Office testified that he transported evidence to BCI in Bowling Green for analysis, and he identified the evidence submittal sheet that he received from BCI upon the transfer of the evidence. Additionally, Detective Joseph testified that he transported four evidence bags from BCI in Bowling Green to the police station, and that he gave the evidence bags to Detective Boyer.

{¶12} Jennifer Acurio testified that she was a forensic scientist with BCI; that she tested thirty-five white tablets related to the February 19, 2009 drug purchase and found them to contain Hydrocodone; that, after she tested the tablets, she inserted them into a bag and placed the bag in a vault until law enforcement retrieved them; that the substances are always stored in a locked vault that only the evidence technicians and chemists can access; that an electronic log is kept of

every person who enters the vault; that she had a chain of custody that tracked the piece of evidence, but not a list of everyone that went into the vault; that, according to the chain of custody log on the Hydrocodone tablets, the tablets were first received by Elaine Dierksheide in the Bowling Green office; that, from there, Rhonda Boston transferred the evidence from the Bowling Green office to the Richfield office to be analyzed; that Carrie Maxwell, an evidence technician in the Richfield office, received the evidence from Boston and placed it in the vault; that, from there, she handled and analyzed the evidence; that Maxwell then placed the evidence into a box in the vault to be sent back to Bowling Green; that Jeff Lynn transported the evidence back to the Bowling Green office; that Judy Wilhelm, an evidence technician in the Bowling Green office, was the next person to handle the evidence; that Dierksheide then returned it to the police department; and, that she placed a seal on the container after she had examined the evidence, and that same seal was still in place.

{¶13} Keith Taggart testified that he was a forensic scientist with the Richfield BCI office; that he tested the Hydrocodone, Oxycodone, and Codeine from the February 11 controlled purchase; that the drugs were originally received by Dierksheide at the Bowling Green office and transported to the Richfield office by Laura Risdon; that those drugs were received by the Richfield office on April 6, 2009; the he removed the drugs from the property room for testing on April 8,

2009, and returned them on April 11, 2009; that Marti Manke then gave the drugs to Vicky Lilly for transportation to the Bowling Green office; that he also tested the Oxycodone from the February 12 controlled purchase; that BCI uses an electronic tracking procedure to record every person who handles evidence; and, that every piece of evidence BCI receives is kept according to this procedure.

{¶14} Kelsey Degen testified that she was a forensic scientist with the Bowling Green office of BCI; that she examined the marijuana involved in the three March 29, 2009 purchases and the purchase on March 30, 2009; that these substances were received at BCI by Judy Wilhelm, who scanned them into the database and placed them in the property room; that she took the substances out of the property room on June 4, 2009, and returned them on June 10, 2009; and, that, after she tested the substances, Wilhelm gave the substances back to the police officers who transported them back to the police station.

{¶15} During the proceedings, the trial court dismissed Count Three of the indictment.

{¶16} At the close of the presentation of evidence, the State moved for the introduction of all forty-one exhibits used during trial. Ward objected to the introduction of all the drugs and the evidence submittal sheets entered as exhibits on the grounds that a proper chain of custody was not established for the drugs; that an evidence custodian from BCI failed to testify regarding BCI's handling of

the drugs; and, that an evidence log was not introduced for the drugs or the evidence submittal sheets. The trial court overruled Ward's objections and admitted all the exhibits with the exception of the drugs pertaining to dismissed Count Three of the indictment.

{¶17} Thereafter the jury returned a guilty verdict on all the remaining counts of the indictment.

{¶18} Subsequently, the matter proceeded to a sentencing hearing, at which the State argued as follows:

> **In considering the purposes of felony sentencing under R.C. 2929.11 * * * the State asks the court to consider the drug problem that's been going on in Fostoria for a number of years and is in [sic] increasingly growing worse. * * * The defendant has been a huge part of this Fostoria drug problem with trafficking illegal drugs of many different forms.**
>
> **\* \* \***
>
> **In reviewing the seriousness and recidivism factors under Revised Code Section 2929.12, the State would like to point out to the court the defendant's history of criminal convictions. In Seneca County, the defendant's criminal history began in 1985 when he was convicted of contributing to the delinquency of a minor; in 1986 he was convicted of assault; in 1987 he was convicted of a felony charge of receiving stolen property. In 1994 he was convicted of corruption of a minor, a felony of the third degree. The defendant was placed on probation for that offense and violated probation and ended up doing a year and a half in prison based on that violation.**
>
> **In 1999, this court sentenced the defendant to prison for two felony charges, being domestic violence and breaking and entering. The defendant also has an OVI from 1985 and 1990**

-10-

**from the Fostoria Municipal Court, an OVI from the Tiffin Municipal Court in 1991 and 1992. In 2003 the defendant was convicted on OVI in Findlay Municipal Court. Defendant also has convictions from Jackson, Ohio. He was convicted of domestic violence in 2004 and 2005 in Jackson. During the time on probation for those domestic violence convictions, the defendant violated his probation at least three times. He was also convicted of OVI in Jackson in 2005 and 2007; of theft in Jackson in 2006 again violating his probation in 2007.**

**He was convicted in the state of Virginia for petty larceny in 1997. He also has convictions from the state of Florida from Polk County in 1986 for criminal mischief, resisting arrest, and loitering. From [another] county, he had battery convictions from 1988.**

(Sentencing Tr., pp. 2-6).

{¶19} Additionally, Detective Armstrong stated the following at the sentencing hearing:

**I'd like to start mentioning a few names, Andy Nordholt, Austin Stallnecker, Danny Aiello, Donald Hoffman, these are names of just a few of the people here in Seneca County who have all died in the past year from prescription pill overdoses. Law enforcement has seen a continual rise in these types of deaths and they have been occurring at a rate of approximately one death every two months.**

(Id. at p. 8).

{¶20} Thereafter, the trial court sentenced Ward to a twelve-month prison term on Count One and an eighteen-month prison term each on Counts Two, Four, Five, Six, Seven, Eight, and Nine, with the sentences in Counts One and Two to be served concurrently with each other, but consecutively to all other sentences, for a

total prison term of 126 months. Additionally, the trial court ordered that Ward pay $1,213.30 in restitution to the Seneca County Drug Task Force METRICH Enforcement Unit.

**{¶21}** It is from his conviction and sentence that Ward appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**IT IS ERROR FOR THE COURT TO CONVICT THE DEFENDANT OF MULTIPLE TRAFFICKING COUNTS WHERE THE CONDUCT INVOLVED CONSTITUTED ALLIED OFFENSES OF SIMILAR IMPORT.**

*Assignment of Error No. II*

**IT IS ERROR FOR THE COURT TO ALLOW THE INTRODUCTION OF LAB REPORTS LINKING THE DEFENDANT TO THE SALE OF CONTROLLED SUBSTANCES WHEN A CHAIN OF CUSTODY HAS NOT BEEN PROPERLY ESTABLISHED.**

*Assignment of Error No. III*

**IT IS ERROR FOR THE COURT TO CONSIDER IMPROPER STATEMENTS MADE BY THE STATE AND BY DETECTIVE ARMSTRONG IN DETERMINING AN APPROPRIATE SENTENCE.**

*Assignment of Error No. IV*

**IT IS ERROR FOR THE COURT TO SENTENCE THE APPELLANT/DEFENDANT TO MAXIMUM CONSECUTIVE SENTENCES BASED ON SENTENCING CONSIDERATIONS MANDATED BY O.R.C. 2929.11-12.**

*Assignment of Error No. I*

{¶22} In his first assignment of error, Ward argues that the trial court erred in convicting him on multiple trafficking counts where those counts were allied offenses of similar import. Specifically, Ward contends that Counts One and Two of the indictment should have merged because they involved the sale of similar Schedule II drugs in one single transaction, and that Counts Six, Seven, and Eight of the indictment should have merged because they all involved the sale of marijuana on the same date. We disagree.

{¶23} We initially note that Ward failed to raise the issue of allied offenses in the trial court, thus waiving all but plain error on this issue. Crim.R. 52(B); *State v. Holdcroft*, 3d Dist. No. 16-06-07, 2007-Ohio-586, ¶18. In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 1997-Ohio-204; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825.

**{¶24}** R.C. 2941.25 governs multiple count indictments and provides as follows:

> **(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**
>
> **(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

**{¶25}** R.C. 2941.25 requires a two-step analysis. First, we must determine whether the offenses in the indictment constitute allied offenses of similar import under R.C. 2941.25(A). In making this determination, "Courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus.

**{¶26}** If a determination is made that the offenses are allied offenses of similar import, the next step requires a determination of whether the crimes were

committed separately or whether there was a separate animus for the crimes. See *State v. Roberts*, 180 Ohio App.3d 666, 2009-Ohio-298, ¶13, citing *Cabrales*, 118 Ohio St.3d 54, at ¶14. If such a finding is made, the defendant can be convicted of the offenses. *State v. Brown*, 3d Dist. No. 9-09-15, 2009-Ohio-5428, ¶44, citing *State v. Blankenship* (1988), 38 Ohio St.3d 116.

{¶27} Moreover, where a defendant is convicted on multiple counts for the sale of drugs, with each count involving a separate and distinct drug, including where the drugs are contained within different schedules, there is no conviction on allied offenses of similar import. *State v. Lingerfelt*, 9th Dist. No. 4051, 1987 WL 9342. Because the type of drug involved in a trafficking offense is an element of the crime, *State v. Heidelburg*, 12th Dist. No. CA2008-11-141, 2009-Ohio-5520, ¶11, citing *State v. Headley* (1983), 6 Ohio St.3d 475, the commission of one offense of trafficking in a certain type of drug will not result in the commission of another offense of trafficking in a different type of drug.

{¶28} Here, Ward's conviction on trafficking in drugs in Count One of the indictment involved the sale of Hydrocodone, a Schedule III controlled substance, on February 11, 2009, and his conviction on aggravated trafficking in drugs on Count Two of the indictment involved the sale of Oxycodone, a Schedule II controlled substance, on February 11, 2009. Each of these drugs was purchased in one transaction, as testified to by Detective Boyer; however, the drugs were of

different types. Because each conviction involved a different type of drug, the commission of one offense cannot result in the commission of the other offense. Consequently, we find that these are not allied offenses.

**{¶29}** Additionally, Ward was convicted of trafficking in marijuana on Counts Six, Seven, and Eight of the indictment. Although these three sales of marijuana all took place on March 29, 2009, they were three separate sales, as testified to by Detective Boyer and Detective Armstrong. Consequently, because the three convictions stemmed from three separate transactions, and, therefore, a separate animus existed for each, we find that they are not allied offenses.

**{¶30}** Accordingly, we overrule Ward's first assignment of error.

*Assignment of Error No. II*

**{¶31}** In his second assignment of error, Ward argues that the trial court erred in permitting the introduction of lab reports identifying the drugs in the case where a proper chain of custody was not established. Specifically, Ward contends that the BCI custody logs did not contain any identifying entries of who handled the evidence and when they handled it, and that the testimony from the BCI forensic scientists as to the chain of custody of the evidence was based upon speculation and assumptions. We disagree.

**{¶32}** The admission of evidence is within the trial court's discretion and will not be reversed absent an abuse of that discretion which is materially

prejudicial. *State v. Rollison*, 3d Dist. No. 9-09-51, 2010-Ohio-2162, ¶32, citing *State v. Martin* (1985), 19 Ohio St.3d 122, 129. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. See *State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶¶17-18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle* (2000), 11th Dist. No. 99-L-089, 2000 WL 777835, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶33}** Evid.R. 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "A chain of custody is part of the authentication and identification mandate set forth in the rule, and the State has the burden of establishing the chain of custody of a specific piece of evidence before it can be admitted at trial." *State v. Gomez*, 3d Dist. No. 16-04-10, 2005-Ohio-1606, ¶20, citing *State v. Brown* (1995), 107 Ohio App.3d 194, 200. In establishing a chain of custody for the authentication or identification of evidence, a strict chain of custody is not required, but merely the presentation of evidence to "'establish that it is reasonably certain that substitution, alteration or tampering did not occur.'"

*Brown*, 107 Ohio App.3d at 200, quoting *State v. Blevins* (1987), 36 Ohio App.3d 147, 150. Accordingly, once a reasonable chain of custody has been established, any breaks within the chain go to the weight to be given to the evidence, not its admissibility. *State v. Garcia*, 3d Dist. No. 5-01-12, 2001-Ohio-2262, citing *Brown*, supra.

**{¶34}** In the case at bar, Detective Armstrong testified that he collected the drugs purchased by the confidential informant during the February 11, 12, and 19, 2009 operations, and all three operations on March 29, 2009; that he placed those drugs into evidence and labeled them; and, that he gave all the drugs to Detective Boyer, with the exception of the drugs purchased during the first operation on March 29, which he gave to Detective Joseph.

**{¶35}** Detective Boyer testified that he collected the drugs from the confidential informant during the March 30, 2009 operation; that he received the drugs from Detective Armstrong from the operations on February 11, 12, and 19, 2009, and all three operations on March 29, 2009; that he placed all of these drugs into evidence; and, that he received these drugs back from the transporting officer after they had been analyzed by BCI. Additionally, Detective Boyer identified the evidence submittal sheets from all drug purchase operations on February 11, February 12, February 19, March 29, and March 30, 2009, which indicated that the

drugs collected from each operation were transported to BCI for analysis by Detective Vallery, Officer Horn, or Detective Joseph.

{¶36} Moreover, Detectives Vallery and Joseph, and Officer Horn all testified to the respective drugs they transported to BCI for analysis, including an indication from all three that they received the drugs from Detective Boyer, and an identification of the evidence submittal sheets associated with each piece of evidence transported. Additionally, Officer Horn testified that he transported two evidence bags to the police station from BCI, and Detective Joseph testified that he transported four evidence bags to the police station from BCI, with both indicating they gave the drugs to Detective Boyer upon arrival.

{¶37} Finally, each chemist from BCI who analyzed the drugs involved in this case testified to their chain of custody while in BCI's possession. Acurio testified to each person who handled the Hydrocodone from the February 19, 2009 purchase that was received in the Bowling Green office; Taggart testified to each person who handled the Hydrocodone, Oxycodone, and Codeine received by BCI from the February 11, 2009 purchase, and that he also tested the drugs received from the February 12, 2009 purchase; and, Degen testified to the drugs received from all March 29, 2009 purchases and the March 30, 2009 purchase, including who handled the drugs in the office, when she took them out of the property room for testing, and when she placed them back into the property room.

{¶38} Based on the testimony presented, we find that a clear and sufficient chain of custody was established for each of the drugs admitted into evidence, such that it appears "'reasonably certain that substitution, alteration or tampering did not occur.'" *Brown*, 107 Ohio App.3d at 200, quoting *Blevins*, 36 Ohio App.3d at 150. While there may have been some information missing from the chain, such as each person at BCI who handled the drugs from the February 12 purchase, we find these discrepancies go to the weight to be given to the evidence, not its admissibility.

{¶39} Accordingly, we overrule Ward's second assignment of error.

*Assignment of Error No. III*

{¶40} In his third assignment of error, Ward argues that the trial court improperly considered unproven and prejudicial statements posited by the State at sentencing. Specifically, he contends that the State failed to prove his prior convictions mentioned at sentencing, as required by R.C. 2945.75(B)(1), and that the State and Detective Armstrong made several assertions of unproven facts at sentencing in violation of *U.S. v. Booker* (2005), 543 U.S. 220[1] and R.C. 2930.13(C). We disagree.

{¶41} Initially, we note that Ward cites to *Booker*, 543 U.S. 220, in his claim that the State presented unproven facts used at his sentencing, specifically

---

[1] We note that Appellant's brief incorrectly listed the citation to *Booker* as *453* U.S. 220.

the statement that Ward was part of the expanding drug problem in Fostoria. However, *Booker* has no application in this situation as it addressed the issue of fact-finding by the trial judge as opposed to a jury. Further, the Supreme Court of Ohio, in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, declared portions of the felony sentencing statutes to be unconstitutional, specifically those portions requiring judicial fact finding before imposition of sentences, pursuant to the United States Supreme Court's decisions in *Apprendi v. New Jersey* (2000), 530 U.S. 466; *Blakely v. Washington* (2004), 542 U.S. 296; and *Booker*, 543 U.S. 220. Specifically, *Foster* held that "[t]rial courts [now] have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster*, 109 Ohio St.3d 1, at paragraph seven of the syllabus. Consequently, any argument that unproven facts were used at sentencing must fail, as there is no longer a fact finding requirement when sentencing, and the trial court has full discretion when sentencing, constrained only by the dictates of R.C. 2929.11, 2929.12, 2929.13, and the unsevered portions of R.C. 2929.14. See *State v. Rockwood*, 3d Dist. No. 2-07-31, 2008-Ohio-738, ¶9.

{¶42} Additionally, Ward claims that the statements made by Detective Armstrong referencing individuals in the community who had died as a result of a prescription drug overdose exceeded that which is permitted under a victim impact

statement pursuant to R.C. 2930.13(C). However, R.C. 2930.13(C) has no application here, as Detective Armstrong was not a victim of Ward's crimes, but one of the lead detectives investigating the case. Moreover, R.C. 2929.19(A) permits the court to allow any person with "information relevant to the imposition of sentence in the case" to make a statement. Thus, there was no error in the trial court permitting Detective Armstrong to make a statement regarding the consequences of Ward's offenses on the community.

{¶43} Finally, we find no merit to Ward's argument that the State failed to properly prove his prior convictions at sentencing. While R.C. 2945.75(B)(1) provides that "a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction," the section only pertains to when "it is necessary to prove a prior conviction." R.C. 2945.75(B)(1). Here, there was no necessity that Ward's prior convictions be proven as an element of an offense or to statutorily enhance the degree of an offense. The State was offering the prior convictions as pertinent information to the felony sentencing factors contained in R.C. 2929.12. Furthermore, Ward cites us to no authority finding that a defendant's prior convictions offered at sentencing

for purposes of R.C. 2929.12 factors requires sufficient proof of the conviction. [2]

{¶44} Accordingly, we overrule Ward's third assignment of error.

*Assignment of Error No. IV*

{¶45} In his fourth assignment of error, Ward asserts that the trial court erred in sentencing him to maximum consecutive sentences. Specifically, he argues that, when comparing the facts of the case to the sentencing factors under R.C. 2929.11 through R.C. 2929.12 and Ohio's drug sentencing guidelines, the trial court should not have imposed maximum consecutive sentences, and that his sentence is not consistent with sentences imposed for similar crimes committed by similar offenders pursuant to R.C. 2929.11. We disagree.

{¶46} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh,* 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶8, citing *State v. Carter,* 11th Dist. No. 2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to

---

[2] Although Ward cites to *State v. McCoy* (1993), 89 Ohio App.3d 479, and *State v. Arnold*, 8th Dist. No. 79280, 2002 WL 93423, as an assertion that there are two other ways that convictions can be proven, which he contends were also not followed in this case, these cases also refer to situations where a prior conviction is an element of the offense or is used to statutorily enhance a sentence.

law."[3] *Daughenbaugh,* 2007-Ohio-5774, at ¶8, citing *Carter,* 2004-Ohio-1181, at ¶44; R.C. 2953.08(G).

{¶47} As mentioned in our disposition of Ward's third assignment of error, pursuant to the Supreme Court of Ohio's decision in *Foster*, 109 Ohio St.3d 1, the trial court has full discretion to sentence an offender to any term of imprisonment within the statutory range without a requirement that it make findings or give reasons for imposing the maximum sentence, more than the minimum sentence, or ordering sentences to be served consecutively. Id. at paragraph one of the syllabus.

{¶48} R.C. 2929.11, 2929.12, 2929.13, and the unsevered portions of R.C. 2929.14 govern sentencing. *State v. Petrik*, 3d Dist. No. 3-10-06, 2010-Ohio-3671, ¶29, citing *Foster*, 109 Ohio St.3d 1, at ¶36. R.C. 2929.11(A) and (B) provide as follows:

> **(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.**

---

[3] We note that the Supreme Court of Ohio's plurality opinion in *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, established a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing review standard adopted by three dissenting Justices in *Kalish,* we note that our decision in this case would be identical under the *Kalish* plurality's two-part test.

**(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.**

Additionally, when sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A); see also *State v. Ramos*, 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶25. However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade*, 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶8, citing *State v. Amett*, 88 Ohio St.3d 208, 2000-Ohio-302.

{¶49} In the case at bar, the trial court stated in its judgment entry of sentencing that it considered the factors set forth under R.C. 2929.12 and R.C. 2929.13, along with the principles and purposes of sentencing under R.C. 2929.11. Although we agree with Ward that many of the factors indicating the seriousness of the offender's conduct under R.C. 2929.12(B) are inapplicable to the facts of this case, those are not the exclusive factors for the trial court to consider. Both R.C. 2929.12(B) and (D) indicate the trial court can consider "any other relevant factors" in making the determination of whether the offender's conduct is more serious than conduct normally constituting the offense or whether the offender is

likely to commit future crimes. Moreover, some of the factors under R.C. 2929.12(D) are present in this case, indicating that Ward is likely to commit future crimes, as evidenced by Ward's multiple previous convictions

{¶50} Consequently, because we find that the trial court considered the appropriate sentencing factors under R.C. 2929.11, 2929.12, and 2929.13, because the trial court has the discretion to sentence an offender to any term of imprisonment within the statutory range, and to order sentences to be served concurrently or consecutively, and because Ward has an extensive prior criminal history, evidencing a likelihood of recidivism under R.C. 2929.12(D), we find no error in the trial court's imposition of Ward's sentence.

{¶51} Accordingly, we overrule Ward's fourth assignment of error.

{¶52} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**


**WILLAMOWSKI, J., Concurring Separately.**

{¶53} I concur fully with the majority opinion, however write separately to emphasize that the appropriate standard of review was applied. The standard of

review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellate courts require appellants to meet a clearly and convincingly contrary to law standard of review when reviewing a sentence.[4] For example, if the sentencing court imposed consecutive sentences, as in this case, the standard of review would be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon the proper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C 2929.12.[5]

{¶54} In his fourth assignment of error, Ward alleges that the trial court erred by sentencing him to maximum consecutive sentences because his sentence is not consistent with sentences imposed for similar crimes committed by similar offenders. Ward argues that the trial court's sentence does not comply with R.C. 2929.11. Ward does not argue that the trial court incorrectly applied the factors set forth in R.C. 2929.12(B), which would require a review using an abuse of discretion standard. Thus, the clearly and convincingly standard used to review this case, as set forth in R.C. 2953.08(G)(2) is the proper standard of review herein.

---

[4] Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.

[5] Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.