[Cite as *State v. Cyrek*, 2019-Ohio-4515.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                        |   |                          |
|------------------------|---|--------------------------|
| STATE OF OHIO,         | : |                          |
| Appellee,              | : | CASE NO. CA2019-02-037   |
|                        | : | O P I N I O N            |
| - vs -                 |   | 11/4/2019                |
|                        | : |                          |
| KENNETH CYREK,         | : |                          |
| Appellant.             | : |                          |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-10-1750

Michael T. Gmoser, Warren County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Kenneth Cyrek, appeals his conviction in the Butler County Court of Common Pleas after he pled no contest to one count of aggravated vehicular homicide. For the reasons outlined below, we affirm.

{¶ 2} On October 10, 2018, the Butler County Grand Jury returned an indictment charging Cyrek with three counts of aggravated vehicular homicide and one count of

vehicular manslaughter. As alleged in the bill of particulars, the charges arose after Cyrek was involved in a motor vehicle accident on the evening of August 4, 2018 that caused the death of his wife, Kayla. The bill of particulars also alleged that Cyrek had submitted to a blood-alcohol test that indicated he had a blood-alcohol content of .135 at the time of the accident. The bill of particulars further alleged that Cyrek was operating the motor vehicle involved in the accident with a suspended driver's license.

{¶ 3} On December 13, 2018, Cyrek filed a motion to suppress the results of the blood-alcohol test. The trial court held a hearing on the matter on January 14, 2019. During this hearing, the trial court heard testimony from eight witnesses, including the forensic toxicologist who performed the test on Cyrek's blood. Following this hearing, the trial court denied Cyrek's motion. Shortly after, Cyrek entered a no contest plea to one count of aggravated vehicular homicide in exchange for the other three charges being dismissed. The trial court accepted Cyrek's no contest plea upon finding the plea was knowingly, intelligently, and voluntarily entered. The trial court found Cyrek guilty and scheduled the matter for sentencing.

{¶ 4} On February 7, 2019, the trial court held a sentencing hearing and sentenced Cyrek to the maximum mandatory 11-year prison term. In reaching this decision, the trial court noted that it had considered the necessary sentencing statutes, R.C. 2929.11 and 2929.12, as well as the record, the charge, the statements made at the sentencing hearing, and the victim impact statements that it had received. The trial court also noted that Cyrek had several prior felony convictions, as well as a recent conviction for misdemeanor animal abuse for beating his wife's dog with a hammer. The trial court further noted that Cyrek was on community control at the time of the accident, that "the victim in this matter lost her life, and the Court is considering [Cyrek's] relationship to the victim, who was his wife, and the young age of the victim."

{¶ 5} On February 11, 2019, the trial court issued a judgment entry of conviction reiterating its sentencing decision sentencing Cyrek to the maximum mandatory 11-year prison term. As part of this entry, the trial court again noted that it had considered the record, the charge, "the findings as set forth on the record and herein, oral statements," and "any victim impact statement and pre-sentence report" prior to issuing its sentencing decision. The trial court also noted within this judgment entry that it had considered "the principles and purposes of sentencing under Revised Code Section 2929.11" and "balanced the seriousness and recidivism factors of Ohio Revised Code Section 2929.12" before imposing its sentence. Cyrek now appeals his conviction, raising two assignments of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 8} In his first assignment of error, Cyrek argues the trial court erred by denying his motion to suppress the results of the blood-alcohol test. Cyrek supports this claim by arguing that his blood was not collected in substantial compliance with the Ohio Department of Health regulations as set forth in the Ohio Administrative Code. We disagree.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. This court is therefore bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-

4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 10} "The Director of Health promulgated certain regulations in Ohio Adm.Code 3701-53-01 through 3701-53-10 for testing the concentration of alcohol or drugs of abuse found in an individual's blood, breath, or urine." *State v. Fridley*, 12th Dist. Clermont No. CA2016-05-030, 2017-Ohio-4368, ¶ 30, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 9-10. "When a defendant challenges the validity of a blood test by way of a pretrial motion to suppress," such as the case here, "'the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health' to trigger the presumption of admissibility." *Id.*, quoting *Burnside* at ¶ 24. "Substantial compliance is limited to excusing only deviations from the regulations that are 'clearly de minimis,' i.e. irregularities amounting to 'minimal procedural deviations.'" *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 32, quoting *Burnside* at ¶ 34. "The purpose of these regulations is to ensure the accuracy of the alcohol-test results." *Burnside* at ¶ 21.

{¶ 11} Cyrek initially argues that the state failed to prove it substantially complied with Ohio Adm.Code 3701-53-05(C), which requires all blood samples to be drawn with a "sterile dry needle into a vacuum container with a solid anticoagulant."[1] Relying on that administrative code section, Cyrek claims the vacuum container used to draw his blood did not contain a "solid anticoagulant." However, while we agree that none of the witnesses who testified at the suppression hearing specifically testified that the vacuum container used

---

1. Anticoagulants are used to keep blood from clotting or turning into solid clumps of cells that stick together.

to collect his blood contained a solid anticoagulant, there was testimony that the vacuum container used to collect Cyrek's came from a "blood alcohol draw kit" provided by the Ohio State Highway Patrol that contained a "white powder" used for "preserving blood specimens." There was also testimony that the type of vacuum container used to draw Cyrek's blood contained a solid anticoagulant as part of its manufacturing process.

{¶ 12} Specifically, as the forensic toxicologist who conducted the blood-alcohol test on Cyrek's blood testified:

A: Gray-top tubes contain a solid anticoagulant, yes.

Q: And is that what was used in this case?

A: Yes.

{¶ 13} Continuing, the forensic toxicologist testified:

Q: In this case, when you did your basic drug testing and handled blood, did it appear coagulated?

A: No, it did not.

Q: Okay. So it appeared that it was collected in a tube with an anticoagulant in it?

A: Yes, it did.

{¶ 14} Therefore, while it is true that none of the witnesses who testified at the suppression hearing specifically testified that the vacuum container used to collect Cyrek's blood contained a solid anticoagulant, the state nevertheless presented sufficient competent, credible evidence to support the trial court's finding that an anticoagulant was contained within the vacuum container to establish substantial compliance with Ohio Adm.Code 3701-53-05(C). This includes the forensic toxicologist's testimony that the trial court found both "credible and persuasive." Accordingly, because the state presented sufficient competent, credible evidence to support the trial court's finding that an anticoagulant was contained within the vacuum container used to collect Cyrek's blood,

Cyrek's claim that the state failed to demonstrate substantial compliance with Ohio Adm.Code 3701-53-05(C) lacks merit.

{¶ 15} Cyrek also argues that the state failed to prove it substantially complied with Ohio Adm. Code 3701-53-06(A) since it failed to identify and retain the necessary chain of custody for the vacuum container used to collect his blood. However, it is well-established that a challenge to the chain of custody is "an issue not properly raised in a motion to suppress, rather properly raised in a motion in limine." *State v. Woltz*, 4th Dist. Athens No. 17CA20, 2017-Ohio-9042, ¶ 15. That is to say, "[c]hallenges to the chain of custody are evidentiary and properly determined by the trial court with finality at trial – not at the suppression hearing." *Id.* at ¶ 20; *State v. Stoll*, 5th Dist. Stark No. 1998CA00291, 1999 Ohio App. LEXIS 2488, *6 (May 24, 1999) ("a motion to suppress is not the appropriate vehicle in which to attack a chain of custody issue").

{¶ 16} It is equally well established that a plea of no contest generally waives the offender's right to appeal a trial court's ruling on a motion in limine. *State v. Cummins*, 12th Dist. Clermont No. CA2018-07-051, 2019-Ohio-1496, ¶ 44, fn. 4, citing *State v. Pyro*, 5th Dist. Delaware No. 04CAA01009, 2004-Ohio-4768, ¶ 19 ("a no contest plea generally waives any claim of error with respect to an adverse ruling on a motion in limine"); *see also State v. Engle*, 74 Ohio St.3d 525, 529 (1996) ("[b]y entering a plea of no contest * * *, the defendant voluntarily waives the right to appeal the ruling on the motion [in limine]"); *State v. Miller*, 3d Dist. Allen No. 1-18-17, 2018-Ohio-4648, ¶ 10 ("by entering pleas of no contest, [appellant] waived his right to appeal the trial court's ruling on the State's motion in limine").

{¶ 17} Therefore, because a challenge to a chain of custody is an issue properly raised in a motion in limine, not a motion to suppress, and because a plea of no contest like that Cyrek entered in this case generally waives the offender's right to appeal a trial court's ruling on a motion in limine, Cyrek's claim that the state failed to demonstrate substantial

compliance with Ohio Adm.Code 3701-53-06(A) also lacks merit. Accordingly, finding no merit to either of the arguments raised by Cyrek herein, Cyrek's first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} APPELLANT'S MAXIMUM SENTENCE IS CLEARLY AND CONVINCINGLY CONTRARY TO LAW.

{¶ 20} In his second assignment of error, Cyrek argues the trial court erred by sentencing him to the maximum mandatory 11-year prison term. We disagree.

{¶ 21} As with all felony sentences, we review the trial court's sentencing decision in this case under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Grimm*, 12th Dist. Clermont No. CA2018-10-071, 2019-Ohio-2961, ¶ 43, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Pursuant to that statute, this court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. This court may therefore "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

{¶ 22} Cyrek initially argues that the trial court's sentencing decision was clearly and convincingly contrary to law since there was no evidence presented as to several of the

aggravating factors set forth in R.C. 2929.12(B) indicating his conduct was more serious than conduct normally constituting an aggravated vehicular homicide offense. However, contrary to Cyrek's claim, there is no requirement that each of the aggravating factors listed in R.C. 2929.12(B) be satisfied before the trial court can impose the maximum allowable prison sentence. The statute in fact specifically states that the trial court shall consider only those factors "that apply regarding the offender, the offense, or the victim[.]" Therefore, while we agree that there was no evidence presented as to several of the aggravating sentencing factors set forth in R.C. 2929.12(B), that does not render the trial court's sentencing decision clearly and convincingly contrary to law. It is only the factors that apply that the trial court is required to consider, not the factors that do not. Cyrek's claim otherwise lacks merit.

{¶ 23} Cyrek also argues that the trial court's sentencing decision was clearly and convincing contrary to law since his conduct was not the most serious form of an aggravated vehicular homicide offense. However, while Cyrek's conduct may not be the most egregious form of the offense imaginable, Cyrek's decision to operate his vehicle while under the influence of alcohol nevertheless led to his wife's death and placed many other innocent individuals' lives at risk. This occurred while Cyrek was on community control resulting from a prior felony offense and while Cyrek was driving under a suspended license. Therefore, while it may be true that Cyrek did not intend to kill his wife, Cyrek's conduct is nevertheless more serious than what would normally constitute the offense of aggravated vehicular homicide. To hold otherwise would unnecessarily interfere with the trial court's discretion in determining what sentence should be imposed on the offender under these circumstances. Cyrek's claim otherwise again lacks merit.

{¶ 24} Cyreck further argues that the trial court's sentencing decision was clearly and convincingly contrary to law since the record indicates that he is not likely to reoffend.

Pursuant to R.C. 2929.12(E), the trial court is required to consider several factors in determining whether the offender is likely to commit future crimes. This includes whether the offender shows genuine remorse for the offense. *See* R.C. 2929.12(E)(5). Cyrek, however, already had a lengthy criminal record prior to him being found guilty of aggravated vehicular homicide in this case. R.C. 2929.12(E)(2). This includes several prior felony offenses that resulted in Cyrek serving time in prison. The record indicates Cyrek also had a conviction for misdemeanor animal abuse due to him beating his wife's dog with a hammer. Therefore, while Cyrek claims it is unlikely that he would commit any future crimes, the record unfortunately indicates otherwise. Accordingly, finding no merit to any of the arguments raised herein, Cyrek's second assignment of error is overruled.

{¶ 25} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

- 9 -