[Cite as *State v. Walton*, 2021-Ohio-3958.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-12-124 |
| | : | O P I N I O N |
| - vs - | | 11/8/2021 |
| | : | |
| MARCQUAN D. WALTON, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-05-0599


Michael T. Gmoser, Butler County Prosecuting Attorney, and Stephen M. Wagner, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.


**PIPER, P.J.**

{¶1} Appellant, Marcquan Walton, appeals a decision of the Butler County Court of Common Pleas denying his motion to suppress evidence related to his convictions for trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, and illegal possession of drug paraphernalia.

{¶2} Police received a call that a robbery occurred behind the U.S. Market in Hamilton, Ohio. The information obtained by police indicated that the robbery involved a

firearm and was perpetrated by five teenage African American males. A police sergeant was patrolling the area nearby with his partner and responded to the U.S. Market location within one to two minutes after receiving the dispatch. The sergeant and his partner began to search for the reported suspects.

{¶3} Approximately 30 seconds after arriving at U.S. Market, and one block away from the market itself, the officers observed two African American males walking. One of the males, later identified as Walton, looked like a teenager. The sergeant asked Walton to raise his hands and then approached him. The sergeant asked Walton whether he had weapons or illegal items on his person, and Walton replied that he had marijuana in his pocket. Walton then reached for his right pocket, and the sergeant reminded him to keep his hands in the air. Even then, Walton reached again toward his right pocket.

{¶4} The sergeant and his partner performed a pat down of Walton and located marijuana, fentanyl, a digital scale, as well as approximately $2,300 in cash. Walton was indicted for trafficking and possession of a fentanyl-related compound, as well as possession of drug paraphernalia. Walton filed a motion to suppress, arguing that the police lacked reasonable articulable suspicion to stop him and that police lacked legal grounds to search his person. The trial court denied the motion, and Walton pled no contest to the charges. The trial court found Walton guilty, merged the allied offenses, and sentenced Walton to community control. Walton now appeals the trial court's denial of his motion to suppress, raising the following assignment of error:

{¶5} THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

{¶6} Walton argues in his assignment of error that the trial court erred by denying his motion to suppress.

{¶7} Appellate review of a ruling on a motion to suppress presents a mixed

question of law and fact.  *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15.  When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility.  *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8.

{¶8}  This court is therefore bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Cyrek*, 12th Dist. Butler No. CA2019-02-037, 2019-Ohio-4515, ¶ 9.  "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard."  *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶9}  Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures.  *State v. Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, ¶ 9; *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507 (1967).  Any searches or seizures that occur "outside the judicial process, without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment — subject only to a few specially established and well-delineated exceptions."  *Id.* at 357.  An investigative stop, or a *Terry* stop, by a police officer is a common exception to the Fourth Amendment warrant requirement.  *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868 (1968).

{¶10}  Pursuant to *Terry,* a police officer may detain an individual without probable cause when the officer has reasonable suspicion based on specific, articulable facts, that criminal activity is afoot.  *Id.* at 21.  "An investigatory stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'"  *State v. Jordan*, 104

Ohio St.3d 21, 2004-Ohio-6085, ¶ 35.

{¶11} Reasonable articulable suspicion is "something more than an undeveloped suspicion or hunch" but is less than the level of suspicion required for probable cause. *State v. Hinkston*, 12th Dist. Clermont No. CA2020-03-012, 2020-Ohio-6903, ¶ 18; *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). "Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together, with rational inferences from those facts, reasonably warrant the intrusion." *State v. Hill*, 12th Dist. Warren No. CA2015-05-044, 2015-Ohio-4655, ¶ 10.

{¶12} Reasonable and articulable suspicion is determined by evaluating the totality of the circumstances "through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002).

{¶13} An assessment of the totality of the circumstances "does not deal with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, (1981). As such, this court will consider the cumulative facts "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.*

{¶14} After an officer makes a lawful *Terry* stop, the officer may conduct a limited protective search, or a pat down, for weapons if the officer has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27; *Popp* at ¶ 12. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably

prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27. "The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Andrews*, 57 Ohio St.3d 86, 89 (1991).

{¶15} Based on the totality of the circumstances presented in the present case, we find that law enforcement had reasonable and articulable suspicion to effectuate a *Terry* stop on Walton in order to investigate the possibility of criminal activity and that the officers acted lawfully in conducting a protective pat down of Walton for weapons.

{¶16} At the time law enforcement encountered Walton, they had just received notice that a robbery occurred at the U.S. Market location and that such robbery involved a firearm. The officers encountered Walton within 30 seconds of arriving on the scene and only one block away from the reported location of the robbery. *See State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622 (finding *Terry* stop valid where the stop occurred "very close in time" and in location to where officers heard gunshots and appellant was the only person officers saw after they heard the shots).

{¶17} The officers were also told that a firearm was used in the commission of the robbery, which gave the sergeant reason to be on alert for weapons. The sergeant had been told that multiple African American teenagers were the perpetrators of the crime, and Walton matched the description of the suspects. While Walton was not accompanied by exactly four others at the time the sergeant observed him, the sergeant testified that he was not necessarily looking for a group of five because the perpetrators would "spread" after commission of the crime and "they usually don't stay together if it happens."[1]

---

1. The foregoing paragraphs support a *Terry* stop and investigation. Obviously, when Walton was stopped, and the sergeant began his investigation by confronting Walton, the *Terry* stop was initiated. The precise moment the *Terry* stop was initiated was not raised on appeal, nor was it briefed by the parties.

{¶18} Upon commencement of the investigation, Walton immediately admitted to the sergeant that he had illegal marijuana on his person. Walton continued to make multiple movements toward his right pocket even after the sergeant instructed him to stop. This court has previously recognized that "the need for a protective pat-down becomes more urgent where drugs are involved." *Jimenez*, 2012-Ohio-3318 at ¶ 15. *See also State v. Bales*, 2d Dist. Montgomery No. 24897, 2012-Ohio-4968, ¶ 23. The nexus between drugs and guns can create a reasonable suspicion of danger to the officer. *State v. Wyatt*, 12th Dist. Warren No. CA2020-11-076, 2021-Ohio-3146, ¶ 18-25.

{¶19} Based on the officers' understanding of the reported crime, the short response time, Walton's matching the description of the purported assailants, Walton's admission of having marijuana on his person, as well as Walton's behavior of continually reaching toward his pocket, we find that the officers had sufficient reasonable suspicion to conduct a pat down of Walton in order to complete an investigative stop pursuant to *Terry*.

{¶20} Despite the circumstances as they existed at the time of the stop, Walton challenges the reliability of the dispatch in support of his argument that the stop was invalid. However, Walton did not raise the reliability issue to the trial court or in his motion to suppress, and thus has waived the issue on appeal. *State v. J.A.C.*, 12th Dist. Warren Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, ¶ 22.

{¶21} Pursuant to Crim.R. 47, in filing a motion to suppress in a criminal proceeding, a defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." This requires a defendant to "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Orr*, 12th Dist. Brown No. CA2015-08-019, 2016-Ohio-1148, ¶ 9. A defendant's motion to suppress must clearly identify the grounds upon which he challenges the constitutionality of a warrantless seizure. *Xenia v. Wallace*, 37 Ohio St.3d

216, 218 (1988). Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal. *State v. Peagler*, 76 Ohio St.3d 496, 500 (1996).[2]

{¶22} Walton's failure to challenge the reliability of the dispatch denied the sergeant the ability to testify to the details of the dispatch, and also denied the state an ability to demonstrate the reliability of the information at the suppression hearing. We agree with the concurring opinion, "Walton needed to raise his arguments regarding the reliability of the dispatch earlier, specifically in his motion to suppress, in order to impose a burden on the state to prove the reliability of the dispatch." (Citation omitted).

{¶23} After reviewing the record, considering all of Walton's arguments, and viewing the circumstances through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold, we find that the sergeant had reasonable articulable suspicion to perform a *Terry* stop of Walton so that the trial court properly denied the motion to suppress. Walton's single assignment of error is therefore, overruled.

{¶24} Judgment affirmed.

HENDRICKSON, J., concurs.

BYRNE, J., concurs separately.

**BYRNE, J., concurring separately.**

{¶25} I agree with the majority opinion's statement of the facts and procedural history, as well as its description of the key legal principles at issue in this case, as set forth

---

2. When raising suppression issues to be litigated, the Ohio Supreme Court has upheld the importance of notice to the prosecutor, stating, "[t]o suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor *notice* of the basis for the challenge." (Emphasis added.) *City of Xenia v. Wallace*, 37 Ohio St. 3d 216 (1988), paragraph one of the syllabus

in ¶ 1-14 above.  However, I write separately and concur in the judgment, rather than fully joining the majority opinion, because I analyze certain issues in a different manner than the majority.

**Timing of *Terry* Stop**

{¶26}  The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.  ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *").  "Not all interactions between police officers and citizens are seizures under the Fourth Amendment."  *State v. Keating*, 12th Dist. Clermont No. CA2019-08-064, 2020-Ohio-2770, ¶ 13, citing *State v. Brown*, 12th Dist. Clermont No. CA2001-04-047, 2001 Ohio App. LEXIS 5476, *5 (Dec. 10, 2001).

> The United States Supreme Court has recognized three categories of police interactions with members of the public: (1) a consensual encounter, which requires no objective justification, (2) a brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, and (3) a full arrest, which must be supported by probable cause.

*Id.* at ¶ 13, citing *State v. Wynne*, 10th Dist. Franklin No. 18AP-531, 2019-Ohio-1013, ¶ 12.

> In determining whether an encounter between a police officer and a citizen is a seizure and thus implicates the Fourth Amendment, the question is whether, in light of all the circumstances surrounding the encounter, a reasonable person would believe he or she was not free to leave.

*Id.* at ¶ 14, citing *Wynne* at ¶ 13.  "Stated otherwise, the question is whether, taking into account all the circumstances surrounding the encounter, a reasonable person would feel free to decline the officer's request or terminate the encounter."  *Id.*, citing *State v. Brown*, 12th Dist. Clermont No. CA2001-04-047, 2001 WL 1567340, *5-6 (Dec. 10, 2001), in turn citing *Florida v. Bostick*, 501 U.S. 429, 436-437, 111 S. Ct. 2382, (1991).  "As long as a reasonable person would feel free to disregard the officer, the encounter is consensual and

no reasonable suspicion is required." *Id.,* citing *Bostick* at 434. Under this objective test, we consider not whether the individual believed he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person. *Id.,* citing *Columbus v. Body,* 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, ¶ 14.

> Circumstances indicating that a person has been seized include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, and blocking the person's path.

*Id.,* citing *Brown* at *6; *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870 (1980); *Wynne* at ¶ 13.

{¶27} In this case, after observing Walton and his companion walking on South Monument Street in Hamilton, the sergeant, placing his hands on his own head and approaching Walton, demanded that Walton place his hands on his head. I conclude that the *Terry* stop occurred at this point in the encounter. An officer's verbal demand that an individual place his hands on his head would convey to a reasonable person that the person was not free to decline the officer's request or terminate the encounter. *See id.* As a result, Walton was, at that point, seized for Fourth Amendment purposes. *Id.* This conclusion is further supported by the fact that when Walton told the sergeant that he had marijuana on his person and reached for his pocket, the officer reminded Walton that he must keep his hands on his head. Walton was certainly not free to leave.

**Reasonable Suspicion for *Terry* Stop**

{¶28} Having determined when the *Terry* stop occurred, I must next analyze whether the officers had reasonable suspicion to conduct the *Terry* stop. At the point that the *Terry* stop occurred, the only information known to the officers was the information

relayed to them in the dispatch about a purported robbery behind the U.S. Market.

{¶29} In his first issue presented for review, Walton argues that the officers lacked reasonable suspicion for the *Terry* stop because they lacked "specific facts that a robbery occurred behind the U.S. Market or that Walton participated in it." He cites a well-developed line of cases holding that an anonymous tip (which he assumes was the basis of the dispatch) is presumed unreliable, and requires independent police corroboration to support reasonable suspicion. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 298 (1999); *State v. Sexton*, 12th Dist. Butler No. CA2019-08-133, 2020-Ohio-4179, ¶ 29-30.

{¶30} The majority concludes that Walton waived any argument regarding the dispatch's reliability because he did not challenge the dispatch's reliability before the trial court or in his motion to suppress. *See* ¶ 20-21 above. The majority also notes that, if Walton had argued against the reliability of the dispatch in his motion to suppress, the state would have had the burden to prove that the dispatch was reliable. I agree. The Ohio Supreme Court has held that:

> To suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.

*Xenia v. Wallace*, 37 Ohio St. 3d 216 (1988), paragraph one of the syllabus. A defendant is required to give the prosecutor notice of the grounds on which the defendant challenges a warrantless search or seizure, but this is *not* the same thing as the defendant having the burden of proof. That burden is on the state. The Ohio Supreme Court in *Wallace* went on to explain that:

> Once a defendant has demonstrated a warrantless search or seizure and adequately clarified that the ground upon which he challenges its legality is lack of probable cause, the prosecutor bears the burden of proof, including the burden of going forward with evidence, on the issue of whether probable cause existed

for the search or seizure.

*Id.* at paragraph two of the syllabus. While *Wallace* referred to probable cause, rather than reasonable suspicion, we have applied *Wallace*'s burden of proof analysis when reviewing the denial of motions to suppress alleging a lack of reasonable suspicion. *State v. Blatchford*, 12th Dist. Preble, No. CA2015-12-023, 2016-Ohio-8456, ¶ 28, 35-36.

{¶31} In his motion to suppress Walton entirely failed to mention or argue in any way that the dispatch was not reliable, and therefore the state never had the burden of proving that the dispatch was reliable. For this reason I agree with the majority that we may not consider Walton's arguments regarding the reliability—or lack thereof—of the dispatch.[3]

{¶32} Because Walton did not challenge the reliability of the dispatch in his motion to suppress, the only question remaining regarding the reasonable suspicion analysis is whether the officers could lawfully perform a *Terry* stop based on the very limited description provided by the dispatch. Walton argues they could not, because, as he states in his appellate brief, "race alone is not a reasonable factor when the suspect's race is the predominant race for the area." Walton cites as his sole support *United States v. Brignoni-Ponce,* 422 U.S. 873, 885-886, 95 S.Ct. 2574 (1975).

{¶33} Walton raises a serious concern that merits careful consideration. Police should not detain individuals based solely on their race. But that is not what happened here. In fact, Walton and his companion were not stopped because of "race alone" (as

---

3. Walton's counsel briefly referenced concerns regarding the dispatch's reliability in his first closing argument at the suppression hearing, without citing any applicable case law. (Suppression Hearing Tr., p. 23) ("If the Hamilton Police Department's dispatch can only give out information of, there's five young black men that we think are involved with a robbery, that's not enough information. Now, you get to the point of, three officers arrive on scene, to where the alleged robbery took place. *There is zero investigation that takes place on scene. Nobody's questioned. They don't go inside the US Market to see if there's anybody there that has any information. There's no witnesses there. There's no victim there on scene to ask and take anything else from.* All they have is five young black men as their target of suspects"). (Emphasis added.) However, Walton needed to raise his arguments regarding the reliability of the dispatch earlier, specifically in his motion to suppress, in order to impose a burden on the state to prove the reliability of the dispatch. *Wallace,* paragraphs one and two of the syllabus. *See* Crim.R. 47.

Walton contends), but based on five factors: (1) race, (2) age, (3) sex, (4) geographic proximity, and (5) temporal proximity. The dispatch identified the alleged robbers of the U.S. Market by three characteristics: race (black), age (teenagers), and sex (males). The officers detained the only two individuals matching those three characteristics within a very close geographic proximity to the U.S. Market (one and a half blocks)[4] within very close temporal proximity (two and a half minutes at most) to the issuance of the dispatch. The fact that there were five factors tying Walton to the alleged robbery distinguishes this case from *Brignoni-Ponce*, in which the United States Supreme Court held that it was unconstitutional for police to rely on the "single factor" of Mexican ancestry to detain individuals to determine if they were illegal aliens in an area where most people were of Mexican ancestry. 422 U.S. at 885-86. And notably, *Brignoni-Ponce* stated that ancestry may be a "relevant factor" in a reasonable suspicion analysis, just not when "standing alone." *Id.* at 886. *Brignoni-Ponce* therefore does not support Walton's appeal.

{¶34} Walton also argues that "proximity to a crime is not a reasonable factor that particularizes the detainee to the crime." Walton cites *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 26. But Walton's citation is to Justice Donnelly's concurrence in the judgment in *Hairston*, not to the majority opinion, and the majority held that the *Terry* stop in that case—which involved facts very similar to this case—was based on reasonable suspicion. *Id.* at ¶ 23. Furthermore, the concurrence cited by Walton goes on to state that "Given how close Hairston was to the crime, in both time and place, I would hold that the trial court's determination of reasonable suspicion was legally justified." *Id.* at ¶ 27. As with *Brignoni-Ponce*, *Hairston* does not support Walton's appeal.[5]

---

4. The majority and the briefs repeatedly refer to "one block." However, later in the transcript the location where Walton and his companion were stopped was clarified as being *one and a half* blocks from the U.S. Market.
5. The officers in *Hairston* heard gunshots and rushed to the area where they believed the gunshots to have

{¶35} For these reasons I agree with the majority that the officers had reasonable suspicion to stop Walton. But this is a very close case, and my conclusion is highly dependent on Walton's waiver of any challenge to the reliability of the dispatch and the very small amount of time between the dispatch and the *Terry* stop. My conclusion does not at all suggest that a dispatch identifying a suspect's race, and nothing else, would give police carte blanche to detain everyone of that race; other identifying factors are required, and they were present here.

## Pat Down Search

{¶36} I agree with the majority's analysis regarding the pat down search.

## Walton's Argument Based on the Ohio Constitution

{¶37} One final note. Walton argues that the Ohio Supreme Court has found the Ohio Constitution to be "more rights protective than the Fourth Amendment" and that this court should therefore rule for him on Ohio state constitutional grounds. He cites *State v. Brown*, 99 Ohio St. 3d 323, 2003-Ohio-3931, in which the Ohio Supreme Court held that "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors." *Id.* at ¶ 22.

{¶38} Ohio courts should be open to arguments that, in some instances, the Ohio

---

originated, arriving in 30 to 60 seconds. *Id.* at ¶ 2-3. The officers confronted and conducted a *Terry* stop on the only individual they found in the area. *Id.* at ¶ 3. The Ohio Supreme Court concluded that, based on the totality of the circumstances, the officers had reasonable suspicion to stop Hairston. *Id.* at ¶ 11. Immediately after finding that the officers in *Hairston* had reasonable suspicion, the *Hairston* majority opinion stated that "First, Officer Moore personally heard the sound of gunshots—the gunshots were not faint and sounded close-by. *This is not a case in which the officers relied on a radio dispatch or other secondhand information about shots being fired*, * * * but one in which they heard and immediately reacted to the sound of nearby gunfire." (Emphasis added.) *Id.* at ¶ 11, citing *In re D.W.*, 184 Ohio App.3d 627, 2009-Ohio-5406, ¶ 32 (2d Dist.). The italicized language suggests that *Hairston* may have come out differently if the police had relied on a dispatch. The supreme court's distinction between a case where officers personally heard gunshots from one in which they relied on a dispatch regarding gunshots seems to be based on the relative reliability of personal observation as opposed to the *potential* unreliability of a dispatch. Because Walton waived the argument that the dispatch was not reliable, the language in ¶ 11 of *Hairston* does not support a ruling for Walton in this case.

- 13 -

Constitution may provide greater protections to individuals (whether in the criminal context or otherwise) than those provided by the United States Constitution, and I welcome Walton's effort. However, Walton failed to raise this argument until his appellate reply brief, and the argument is therefore waived. *State v. Bullard*, 12th Dist. Clermont No. CA2012-09-064, 2013-Ohio-3313, ¶ 8. Even if the argument were not waived, Walton has not pointed to any language in the text of the Ohio Constitution supporting his argument.

{¶39} For all of these reasons I concur in the judgment.