[Cite as *State v. Maffey*, 2021-Ohio-2460.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2020-08-045 |
| | : | O P I N I O N |
| - vs - | | 7/19/2021 |
| | : | |
| MICHAEL P. MAFFEY, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019 CR 00921

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellant.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellee.

**HENDRICKSON, J.**

{¶1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Clermont County Court of Common Pleas granting a motion to suppress filed by defendant-appellee, Michael P. Maffey. For the reasons set forth below, we reverse the judgment of the trial court.

{¶2} In September 2019, Maffey was indicted for aggravated possession of drugs.

The charges stemmed from an agent's stop of a vehicle in which Maffey was a passenger. During the stop, the agent searched both the vehicle and Maffey, and discovered methamphetamine under the vehicle's passenger-side visor. Maffey pleaded not guilty to the charges.

{¶3} In January 2020, Maffey moved to suppress the evidence discovered as a result of the officer's stop and search of the vehicle, as well as his search of Maffey's person. In his motion, Maffey argued the officer improperly extended the traffic stop, and that the resulting search of the vehicle and his person were not supported by probable cause.

{¶4} At the suppression hearing, Agent Robert Bailey with the Clermont County Sheriff's Office testified that he had been employed with the Sheriff's Office since 1998 and became involved with the canine program in 2004. On October 21, 2018, Agent Bailey was doing "drug interdiction work," and was parked near the intersection of Inez Avenue and Airport Road in Tate Township. The agent described the "general area" as a "high drug area."

{¶5} While parked near the intersection, Agent Bailey observed a vehicle commit two traffic violations during its turn at the intersection's stop sign. Specifically, the driver failed to timely use his turn signal and the vehicle had a loud exhaust system hanging from the bottom of the vehicle. Agent Bailey stated he made several traffic stops throughout his shift that day, and that it was common for him to initiate traffic stops due to such traffic violations, regardless of whether the violations occurred in high traffic areas or not.

{¶6} After observing the traffic violations, Agent Bailey initiated a traffic stop at 5:01 p.m. The agent then retrieved the driver's identification, and noticed the passenger, Maffey, was not wearing a seatbelt. At that point, Agent Bailey asked Maffey for his identification, to which Maffey responded that his name was Michael Davis and his date of birth was March 29, 1960, but he could not recall his social security number. Agent Bailey testified

"it appeared to [him] * * * that [Maffey] was being reluctant or misleading about his - - who he was and his identification." Specifically, Agent Bailey was suspicious of Maffey's response because, in his experience, "somebody that age usually knows their Social Security number."

{¶7} At that point, Agent Bailey radioed the department's communication center to "run" the information provided by Maffey and the driver. The purpose of radioing in the information was to check the driving status of the driver and to conduct a routine warrant check on the driver and Maffey. While the communication center was running the information, Agent Bailey deployed his canine, Mox, for a free air sniff around the exterior of the vehicle. According to Agent Bailey, Mox started at the front driver-side headlight and worked counterclockwise around the vehicle. During the canine sniff, Agent Bailey observed that "[a]s [Mox] started rounding the passenger side – the rear passenger side of the vehicle, his respiration increased, there's a change of behavior, he bracketed to a point where he centralized where an odor of illegal narcotics was emitting from the vehicle, and he gave a positive alert for the odor of narcotics inside of that vehicle at that point." Agent Bailey testified Mox's positive alert indicated there was an odor of illegal narcotics inside the vehicle.

{¶8} After observing Mox's positive alert, Agent Bailey secured Mox in his vehicle and returned to Maffey and the driver. At that point, the communication center informed the agent that it could not find any information under the name and date of birth provided by Maffey. According to Agent Bailey, this heightened his suspicion that Maffey provided him with false information.

{¶9} At that point, the agent removed Maffey from the vehicle and placed him in handcuffs. Maffey was not under arrest at that time but was secured for officer safety. Agent Bailey explained that, on a prior occasion, he encountered a similar situation where

a suspect provided false information to him during a traffic stop and then fled the scene. Agent Bailey and another deputy engaged in a chase of the suspect, who ultimately stabbed both the agent and deputy. That incident, in addition to the fact that the agent was dealing with Maffey and the driver by himself, led the agent to securing Maffey in handcuffs.

{¶10} After securing Maffey, Agent Bailey advised Maffey and the driver that he "was going to search the vehicle because of the positive [canine] alert." At that point, the agent conducted a pat down of Maffey's person, searching for weapons or contraband. During the pat down, Agent Bailey discovered a wallet on Maffey's person. According to Agent Bailey, the wallet is a common source of concealment for illegal narcotics as it gives the suspect the ability to keep the product close on his person while keeping it concealed. Thus, upon discovering the wallet during the pat down, Agent Bailey proceeded to search the wallet for weapons and contraband. During the search, Agent Bailey discovered an Ohio identification card ("ID") belonging to a Michael Maffey. The agent testified he knew the ID was not drugs and that it was not a weapon when he removed the card from Maffey's wallet; however, he indicated there was a "possibility that there could have been drugs concealed underneath the ID card."

{¶11} After Agent Bailey pulled the ID from the wallet, Maffey admitted, without being questioned, that his name was Mike Maffey and he had a warrant for his arrest. Agent Bailey confirmed this information with the communication center, which advised that Maffey had a felony warrant for his arrest for drugs. After learning of the warrant, Agent Bailey advised Maffey of his *Miranda* rights and asked him if he had anything illegal inside the vehicle. At that time, Maffey informed Agent Bailey that he had a cigarette pack containing methamphetamine above the sun visor on the passenger side.

{¶12} Agent Bailey then removed the driver from the vehicle and conducted a pat down for weapons. After removing the driver from the vehicle, the agent conducted a

search of the interior of the vehicle, wherein he discovered a cigarette pack containing a crystal substance, which later tested positive for methamphetamine, above the passenger-side visor. According to Agent Bailey, he would have found the cigarette pack regardless of whether Maffey informed him of the contraband or not.

{¶13} Around the time Agent Bailey discovered the methamphetamine, another officer arrived on the scene and transported Maffey to the Clermont County jail.

{¶14} After consideration of written closing arguments, the trial court granted Maffey's motion to suppress, and suppressed the statements made by Maffey after the pat down search, as well as the methamphetamine found in the vehicle after Maffey's statements were made. In its decision, the trial court found that Agent Bailey's decision to conduct a pat down search of Maffey was reasonable and justified, given the totality of the circumstances, both as a search for drugs and weapons, but concluded Agent Bailey's examination of the ID exceeded the limited scope of a warrantless search of the person as set forth in *Terry v. Ohio*. The trial court also concluded the inevitable discovery doctrine did not apply in this case, as the state failed to prove the agent was actively pursuing an alternative line of investigation prior to the misconduct.

{¶15} The state now appeals, raising the following assignment of error for our review:

{¶16} Assignment of Error No. 1:

{¶17} THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE AS THE AGENT'S SEARCH DID NOT VIOLATE THE FOURTH AMENDMENT AND AS THE INEVITABLE DISCOVERY AND ATTENUATION DOCTRINES APPLIED TO PREVENT SUPPRESSION.

{¶18} As noted above, in granting Maffey's motion to suppress the trial court suppressed the methamphetamine found in the vehicle as well as the statements Maffey

made to Agent Bailey after the search of the wallet. On appeal, the state only challenges the trial court's decision as it relates to the suppression of the drugs found in the vehicle. While its merit brief states that the trial court erred in suppressing "the evidence" generally, it does not reference or otherwise analyze the correctness of the trial court's decision to suppress Maffey's statements to Agent Bailey after the search of his wallet and inspection of the ID. Rather, the state's brief focuses solely on Agent Bailey's discovery of the methamphetamine inside the vehicle, and the trial court's error in suppressing that evidence. As a result, we will not address the trial court's decision as it relates to the suppression of Maffey's statements. *See, e.g., State v. Brauer*, 12th Dist. Warren No. CA2012-11-109, 2013-Ohio-3319, fn. 1.

## I. Standard of Review

{¶19} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

## II. The Fourth Amendment

{¶20} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-

3563, ¶ 11. A warrantless search is per se unreasonable unless certain "'specifically established and well delineated exceptions'" exist. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S.Ct. 2022 (1971). Once a warrantless search is established, the state bears the burden of proof, including the burden of going forward with evidence, to show the validity of the search. *Id.* at paragraph two of the syllabus. The state's burden of proof that the search is subject to an exception to the warrant requirement is by a preponderance of the evidence. *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974).

{¶21} One such exception, the "automobile exception," provides that warrantless searches of motor vehicles are permitted if police have probable cause to believe that the vehicle contains evidence relevant to a crime and that exigent circumstances exist necessitating a search or seizure. *Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280 (1925). The mobility of automobiles creates the exigent circumstance and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066 (1985); *State v. Mills*, 62 Ohio St.3d 357, 367 (1992). The automobile exception also allows for the warrantless search of packages and containers in a vehicle that could contain items for which officers have probable cause to search. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157 (1982). The Court explained, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825.

{¶22} If an individual's right against unreasonable searches and seizures is violated, the evidence obtained as a result of the violation is subject to exclusion. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405 (1984). While the Fourth Amendment does not contain an express mandate that evidence seized as a result of an illegal search be

suppressed, suppression is inherent in the amendment's language. *Id.*, citing *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613 (1974). "The [exclusionary] rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.*, quoting *Calandra* at 348.

### III. The Inevitable Discovery Doctrine

{¶23} As noted above, the state argues on appeal that the trial court erred in finding the inevitable discovery doctrine does not apply in this case. Specifically, the state contends that, even if the agent's examination of Maffey's ID was unreasonable pursuant to the Fourth Amendment, the trial court erred in concluding the agent did not actively pursue the dog alert on the vehicle before the pat down search. After a review of the record, we agree with the state's claim.

{¶24} Under the inevitable-discovery doctrine, evidence that is illegally obtained is properly admitted "once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. McCullough*, 12th Dist. Fayette No. CA2013-07-021, 2014-Ohio-1696, ¶ 29, citing *State v. Farrey*, 9th Dist. Summit No. 26703, 2013-Ohio-4263, ¶ 17, quoting *State v. Perkins*, 18 Ohio St.3d 193 (1985), syllabus. Under the "prior to misconduct" requirement, inevitable discovery has been restricted to situations where alternative investigatory procedures were already underway or completed. *Id.*, citing *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 56. The doctrine generally applies where, "prior to the misconduct, authorities were actively pursuing an alternate line of investigation that would have resulted in discovery of the evidence, or authorities would have subsequently discovered the evidence through a standardized procedure or established routine." *State v. Cundiff*, 10th Dist. Franklin No. 12AP-483, 2013-Ohio-1806, ¶ 20, citing *Bradford* at ¶ 55.

{¶25} In other words, "the state must show that police were actively pursuing an alternate line of investigation, one untainted by the illegality that took place prior to the particular misconduct." *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-1149, ¶ 43 (2d Dist.). Otherwise, the inevitable-discovery doctrine would apply even if police merely "could have discovered" the evidence, rather than if they "would have discovered" the evidence. *Id.*, citing *State v. Pearson*, 114 Ohio App.3d 153 (3d Dist.1996).

{¶26} The record is clear that during the "pat down," Agent Bailey did not believe the wallet was a weapon. Rather, he immediately identified the item as a "billfold," and proceeded to search the wallet because, in his experience, individuals typically hide contraband in their wallets. It is well settled that a *Terry* search is limited in scope to a pat down search of an individual's outer clothing for weapons. *State v. Arrasmith*, 12th Dist. Madison No. CA2013-09-031, 2014-Ohio-4173, ¶ 15, citing *State v. Terry*, 392 U.S. 1, 29, 88 S. Ct. 1868 (1967). Because a protective pat down is limited to the purpose of protecting the officer, it cannot be employed by the searching officer to search for evidence of a crime. *Id.* citing *State v. Evans*, 67 Ohio St.3d 405, 414 (1993). Consequently, because Agent Bailey was not conducting a protective pat down limited to the search for concealed weapons, the search of Maffey's wallet, and the subsequent inspection of the ID, must be supported by probable cause to be reasonable pursuant to the Fourth Amendment. *Id.* at ¶ 17-18.

{¶27} Here, the trial court determined that in light of the totality of the circumstances, the agent did not have probable cause to examine the ID. Thus, for the inevitable discovery doctrine to apply, the state was required to prove that the drugs ultimately would have been discovered during the course of a lawful investigation prior to the examination of the ID.

{¶28} Regarding the inevitable discovery doctrine, the trial court stated:

There was a positive drug sniff and, at that point, the agent had

probable cause to search the vehicle. Nonetheless, the agent did not immediately search the vehicle. Instead, he conducted the pat down search and the ensuing wallet search including the removal and examination of the ID card. That compromised the investigation. If the agent had had (sic) not impermissibly read and discussed the information on the ID card with [Maffey], there is no evidence that further conversation would have transpired between the agent and [Maffey].

\* \* \*

For purposes of this analysis, the court will accept the agent's testimony that the drugs in the vehicle would have been discovered without [Maffey's] statement, thus satisfying the first part of the test. The court will also accept the second part of the test that the agent possessed a lead (the dog sniff) making the discovery inevitable. However, it is clear that there is no indication the agent or the drug unit 'were actively pursuing an alternate line of investigation prior to the misconduct.' The fact that the dog had alerted to the vehicle before the pat down search demonstrates that the agent did not actively pursue that line of investigation before exceeding the permissible scope of the pat down."

Thus, the trial court concluded that, because there was no active pursuit of an alternative line of investigation prior to the misconduct, the doctrine of inevitable discovery did not apply.

{¶29} After a careful review of the record, we find the state established that the inevitable discovery doctrine permits admission of the evidence discovered in the vehicle. Specifically, we find the state set forth sufficient evidence to prove there was an alternate line of investigation underway prior to Agent Bailey's examination of the ID.

{¶30} As an initial note, the parties do not dispute that, in light of the traffic violations, the agent had probable cause to stop and detain the vehicle and its passengers for a period of time sufficient to perform routine procedures such as a computer check on Maffey's information and the driver's license, registration, and vehicle plates. *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28.

{¶31} Additionally, both Ohio courts and the United States Supreme Court have

determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 22. Thus, "a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop." *Dominguez* at ¶ 22. Moreover, if a trained narcotics dog "alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *Id.*; *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 18. Specifically, once a drug dog alerts to the presence of drugs, "it gives law enforcement probable cause to search the entire vehicle." *State v. Cruz*, 12th Dist. Butler No. CA2013-10-008, 2014-Ohio-4280, ¶ 18.

{¶32} Accordingly, here, as the trial court found, Agent Bailey had probable cause to believe the vehicle contained illegal narcotics based on Mox's alert to the odor of narcotics. The evidence at issue was found in a cigarette pack above the vehicle's passenger side visor. As noted above, if the search of a lawfully stopped vehicle is justified by probable cause, the search of every part of the vehicle and its contents that may conceal the object of the search is also justified. *Id.* at 825. Thus, the searches of the vehicle and the cigarette pack were justified due to Mox's alert and the existing exigent circumstances.

{¶33} However, the drugs were located after the agent examined the ID, and after Maffey informed the agent of his true identity and the drugs' location. Thus, the state was required to demonstrate that the agent was actively pursuing the untainted, alternate line of investigation, i.e., Mox's alert, prior to the agent's search of Maffey's wallet and inspection of the ID.

{¶34} At the suppression hearing, Agent Bailey testified Mox's positive alert indicated to him that there was an odor of illegal narcotics inside the vehicle. Agent Bailey further stated that Mox's alert occurred on the passenger side of the vehicle, where Maffey

was sitting and where the methamphetamine was located. After Mox's alert, the agent secured Mox in his vehicle and removed the occupants from their vehicle. By that time, the communication center had informed Agent Bailey that Maffey's name and birth date was not in the system, which resulted in the agent securing Maffey in handcuffs. Prior to conducting the pat down of Maffey, Agent Bailey advised the driver and Maffey that he was going to search the vehicle because of Mox's positive alert. The agent then proceeded with the pat down of Maffey.

{¶35} In light of the above, the record is clear that Agent Bailey intended to search the vehicle based upon Mox's positive alert after securing Maffey. In addition to the agent's statement that he was going to search the vehicle, Agent Bailey further testified that he would have discovered the drugs under the passenger side visor, regardless of Maffey's statements. This is supported by the record where, as is the case here, the agent had approximately 20 years of experience in the police force, over 10 of which took place with the canine unit, and the drugs were discovered in a cigarette pack – a common container to conceal drugs – under the vehicle's visor – a common place to search in a vehicle. See e.g., *State v. Huff*, 12th Dist. Butler No. CA2019-06-104, 2020-Ohio-1064, ¶ 9 (where methamphetamine was discovered concealed in a cigarette pack during a lawful search); *State v. Barber*, 9th Dist. Summit No. 28507, 2017-Ohio-8010, ¶ 18 (search of the vehicle yielded drugs hidden underneath the vehicle's visor); *State v. Bickel*, 5th Dist. Ashland No. 2006-COA-034, 2007-Ohio-3517, ¶ 7 (same); *State v. Huggins*, 6th Dist. Lucas No. L-95-233, 1996 Ohio App. LEXIS 3323, *2 (Aug. 9, 1996).

{¶36} Based upon this evidence, we conclude the agent's search of the car was not due to Maffey's statements after the search of the wallet. Instead, the line of investigation relating to the vehicle and Mox's alert was separate and distinct from the agent's subsequent search of Maffey. Thus, despite Maffey's declaration of the location of the

methamphetamine in the cigarette pack, and based upon the evidence in the record, we find the agent would have lawfully discovered the drugs in his investigation of Mox's alert regardless of Maffey's statements.

{¶37} We further find that the agent did not abandon the investigation stemming from Mox's alert prior to the misconduct of searching Maffey's wallet. Rather, prior to conducting the pat down of Maffey, the agent specifically noted that he intended to search the vehicle. There is no evidence in the record that he ever abandoned his intent to search the vehicle after searching Maffey. Consequently, the record reflects the agent's investigation into Mox's positive alert was ongoing at the time he removed Maffey from the vehicle. At that point, the record indicates Agent Bailey planned to search the vehicle due to Mox's alert and informed Maffey of his intentions, but temporarily ceased that line of investigation in order to secure Maffey for his safety. Based upon the plain language of the inevitable discovery doctrine, the alternate line of investigation must occur "prior to" the misconduct. Thus, the agent's temporary pause in investigating Mox's positive alert to secure and search Maffey did not render the initial investigation abandoned or the doctrine inapplicable.

{¶38} In light of the above, we find the state set forth sufficient evidence to prove there was an alternative line of investigation underway prior to Agent Bailey's examination of the ID, and that line of investigation was not abandoned when the agent conducted the search of Maffey's wallet. Consequently, we find the trial court erred in concluding the inevitable discovery doctrine did not apply in this case.

{¶39} Accordingly, because the agent was actively pursuing an alternate investigation, one untainted by any illegality and took place prior to the misconduct, the methamphetamine should not have been suppressed. As such, the state's assignment of error is sustained, the trial court's grant of the motion to suppress is reversed as to the

methamphetamine discovered in the vehicle, and this cause is remanded for further proceedings.

{¶40} Judgment reversed.

M. POWELL, P.J., and BYRNE, J., concur.