[Cite as *State v. Thompson*, 2022-Ohio-3602.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 3-22-06

     v.

PATRICK A. THOMPSON,            O P I N I O N

     DEFENDANT-APPELLANT.

**Appeal from Crawford County Common Pleas Court**
**Trial Court No. 22-CR-0052**

**Judgment Affirmed**

**Date of Decision: October 11, 2022**

APPEARANCES:

     *Edwin M. Bibler* **for Appellant**

     *Daniel J. Stanley* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Patrick A. Thompson ("Thompson"), brings this appeal from the March 1, 2022 judgment of the Crawford County Common Pleas Court sentencing him to 11 months in prison after he was convicted in a jury trial of possession of a fentanyl-related compound, possession of drug abuse instruments, and possession of drug paraphernalia. On appeal, Thompson argues that there was insufficient evidence to convict him, that his convictions were against the manifest weight of the evidence, that a specific photograph was improperly introduced into evidence, that he received ineffective assistance of counsel, that his sentence was not supported by the record, and that the cumulative errors deprived him of a fair trial.

### Background

{¶2} After a search warrant was executed at the residence he was staying in, Thompson was charged with possession of a fentanyl-related compound in violation of R.C. 2925.11(A), a fifth degree felony, possession of drug abuse instruments in violation of R.C. 2925.12(A), a second degree misdemeanor, and possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor. Thompson pled not guilty and he proceeded to a jury trial wherein he was convicted of all three charges.

{¶3} On March 1, 2022, Thompson was sentenced to 11 months in prison on the possession of a fentanyl-related compound charge, 45 days in jail on the possession of drug abuse instruments charge, and 15 days in jail on the possession of drug paraphernalia charge. All sentences were ordered to be served concurrently. Thompson now appeals his judgment entry of sentence to this court, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(a) on three charges: (1) Possession of a Fentanyl Related Compound; (2) Possessing Drug Abuse Instruments; and (3) Illegal Use or Possession of Drug Paraphernalia, and thereafter entering a judgment of conviction on those offenses as the charges were not supported by sufficient evidence.**

**Assignment of Error No. 2**
**The jury verdict on the (1) Possession of a Fentanyl Related Compound; (2) Possessing Drug Abuse Instruments; and (3) Illegal Use or Possession of Drug Paraphernalia charges was against the manifest weight of the evidence presented at trial.**

**Assignment of Error No. 3**
**The trial court committed an abuse of discretion by admitting into evidence photographs alleging to represent spoons, a syringe and the contents of the Pall Mall cigarette package without first obtaining the proper court order as required by Crim.R. 26.**

**Assignment of Error No. 4**
**Defendant-Appellant was denied the right to effective assistance of counsel and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and the Ohio Constitution, Article I, Section 10.**

**Assignment of Error No. 5**
**The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.11 and the purposes and principles of the felony sentencing guidelines.**

**Assignment of Error No. 6**
**Defendant-Appellant was deprived of his rights to due process and a fair trial under the federal and state constitutions by the cumulative effect of the numerous errors in this case.**

*First Assignment of Error*

{¶4} In his first assignment of error, Thompson argues that there was insufficient evidence presented to convict him of possession of a fentanyl-related compound, possessing drug abuse instruments, and illegal use or possession of drug paraphernalia.

Standard of Review

{¶5} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102,

(1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

"In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

Controlling Statutes

**{¶6}** In this case Thompson was convicted of possession of a fentanyl-related compound in violation of R.C. 2925.11(A)/(C)(11)(a), which reads as follows:

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**
>
> **\* \* \***
>
> **(B)  Whoever violates division (A) of this section is guilty of one of the following:**
>
> **\* \* \***
>
> **(11) If the drug involved in the violation is a fentanyl-related compound and neither division (C)(9)(a) nor division (C)(10)(a) of this section applies to the drug involved, or is a compound, mixture, preparation, or substance that contains a fentanyl-related compound or is a combination of a fentanyl-related compound and any other controlled substance and neither division (C)(9)(a) nor division (C)(10)(a) of this section applies to the drug involved, whoever violates division (A) of this section is guilty of possession of a fentanyl-related compound. The penalty for the offense shall be determined as follows:**
>
> **(a)  Except as otherwise provided in division (C)(11)(b), (c), (d), (e), (f), or (g) of this section, possession of a fentanyl-related compound is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

Case No. 3-22-06

Thompson was also convicted of possession of drug abuse instruments in violation of R.C. 2925.12(A), which reads:

**(A) No person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use.**

Finally, Thompson was convicted of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), which reads:

**(C)(1) Subject to division (D)(2) of this section, no person shall knowingly use, or possess with purpose to use, drug paraphernalia.**[1]

Evidence Presented by the State

{¶7} Multiple controlled drug buys were conducted by a confidential informant ("CI") at 122 Heritage Circle in Bucyrus from a man named Jordan Partlow. The CI indicated that the drug purchases were always made from Partlow in the basement of the multi-level residence. The CI told law enforcement officers that there were other people living in the residence, but the CI did not specifically indicate who the people were.[2]

---

[1] By definition in R.C. 2925.14(A)(9), a "spoon" can constitute drug paraphernalia.
[2] The CI did not testify at trial.

-6-

{¶8} The controlled drug purchases led to law enforcement acquiring a search warrant for the residence. A team of law enforcement officers executed the search warrant on December 2, 2021. Upon entering the residence, officers split and went to different floors. Some officers went to the basement, where the controlled drug buys had been conducted from Partlow. Other officers went upstairs where there were two bedrooms branching off of a landing.

{¶9} One upstairs bedroom was locked from the outside and was filled with clutter. In fact, most of the house was *significantly* filled with clutter, as exhibited through photographs and officer testimony.

{¶10} As to the second upstairs bedroom, Thompson was found inside. Thompson was removed from the bedroom and taken to the first floor along with three people who were in the basement and another individual who was sleeping on the first-floor living room couch because his bedroom was too full of clutter. Once the people in the home were gathered in one spot, law enforcement began searching the residence.

{¶11} In the room Thompson was staying in upstairs, an officer located two syringes and several spoons with white residue and burn marks on them. An officer testified that a common way to ingest heroin or fentanyl was to heat up the substance on a spoon then draw it into a syringe and inject it.

{¶12} While one officer was in the early stages of searching Thompson's room, Thompson asked a different officer on the first level if he could have a cigarette. Thompson told the officer that his Pall Mall cigarettes were in his room, and that his room was on the top of the stairs where he was located when officers initially entered the residence. Because Thompson was being compliant, he was permitted to have a cigarette.

{¶13} The officer speaking with Thompson shouted up to the officer searching Thompson's room and told him to grab Thompson's cigarettes. Thompson indicated that the cigarettes were on the nightstand or near the bed. The officer searching Thompson's room found the Pall Mall cigarettes in the area Thompson said they would be and he opened the box. When the officer went to pull out a cigarette, he found a small plastic baggie in the box. The plastic baggie was found to contain .11 grams of a fentanyl-related compound. Officers testified that drugs were commonly hidden in cigarette packs.

Analysis

{¶14} Thompson challenges all of his convictions on appeal, but we will begin by addressing his argument that there was insufficient evidence presented to support his conviction for possession of a fentanyl-related compound. With regard to that conviction, Thompson argues that although he asked for a cigarette, and the bindle of a fentanyl-related compound was found inside the cigarette pack, there

was no evidence that he knew or should have known that bindle of drugs was in the Pall Mall cigarette pack. Further, Thompson contends that it is unlikely he would have requested a cigarette if he knew there were drugs in the pack. In essence, he argues that the State did not sufficiently establish that Thompson "knowingly" possessed the fentanyl.

{¶15} The Ohio Revised Code defines "knowingly" as follows:

> **A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.**

R.C. 2901.22(B).

{¶16} To summarize the evidence the State presented related to the fentanyl possession charge, Thompson was found inside the room with the fentanyl, Thompson identified the room wherein the fentanyl was located as his, Thompson claimed that the box of Pall Mall cigarettes wherein the bindle of fentanyl was located as his, Thompson accurately identified the location of the Pall Mall cigarette box that contained the bindle of fentanyl, and instruments commonly used to inject heroin and/or fentanyl were present directly beside Thompson's bed.

**{¶17}** There are numerous inferences that can be made from the State's evidence that Thompson knew that the bindle of fentanyl was in his cigarette pack. For example, the fact that Thompson knew where the pack of cigarettes was located *and* that there were still cigarettes in the pack leads to an inference that Thompson knew what was inside his pack of cigarettes. Moreover, the presence of drug paraphernalia in Thompson's room beside his bed lends further support to the idea that Thompson knew what was inside the cigarette pack, and that he possessed it. *State v. McClain*, 3d Dist. Hancock No. 5-19-19, 2020-Ohio-1436, ¶ 46. (defendant's presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.)

**{¶18}** While Thompson contends that it would be unlikely that he would request a cigarette from a pack of cigarettes that had drugs in it because it could incriminate him, an alternative inference could also be made that Thompson requested a cigarette in hopes that the pack would be brought to him and he could hide the fentanyl-related compound contained inside.

**{¶19}** After reviewing the evidence in the light most favorable to the State, we do not find that insufficient evidence was presented to establish that Thompson knowingly possessed the fentanyl-related compound.

{¶20} Next, Thompson argues that there was insufficient evidence to convict him of possession of drug abuse instruments and possession of drug paraphernalia because the State failed to test the spoons and syringes for drugs and/or DNA. Further, Thompson argues that the testimony from a law enforcement officer that the spoons and syringes were likely being used to unlawfully administer narcotics was insufficient to sustain convictions.

{¶21} Thompson's argument ignores the fact that the testimony indicated that the spoons had burn marks and white residue on them. The white residue on the spoons was actually visible in photographs taken of the spoons where they were found.

{¶22} Further, Thompson ignores the fact that drugs were actually found in his room in question, lending to a reasonable inference that the spoons and syringes were used alongside those drugs. In fact, an officer specifically testified that the most common way to ingest fentanyl or heroin "is to heat the substance up on a spoon * * * with a cigarette lighter * * * underneath it until it gets to a boiling point, draw it up with the syringe and you inject it into a vein." (Tr. at 168).

{¶23} Given all of the evidence that was presented, and when viewing the evidence in the light most favorable to the State as we are directed in our standard of review, we do not find that there was insufficient evidence presented to convict Thompson of possession of a fentanyl-related compound, possession of drug abuse

instruments, or possession of drug paraphernalia.[3] Therefore, Thompson's first assignment of error is overruled.

*Second Assignment of Error*

**{¶24}** In his second assignment of error, Thompson argues that even if there was sufficient evidence presented to convict him, his convictions were against the manifest weight of the evidence.

Standard of Review

**{¶25}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶26}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight

---

[3] We have addressed Thompson's arguments with regard to the specific challenges he made on appeal. We emphasize, however, that we have reviewed the record and we find that all of the elements, even those not specifically challenge by Thompson on appeal, are supported by sufficient evidence.

standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Analysis

**{¶27}** In his second assignment of error, Thompson reincorporates his arguments from the first assignment of error, contending that even if sufficient evidence was presented to convict him, his convictions were against the manifest weight of the evidence. More specifically, Thompson again argues that the testimony did not establish that he knowingly possessed the fentanyl, the spoons, or the syringe. He also argues that a known drug dealer was living in the residence, implying that the drugs could have belonged to the dealer, and he again argues that it was illogical that he would have asked for a cigarette if he knew there were drugs inside of the Pall Mall package.

**{¶28}** Contrary to his arguments, the State presented evidence that Thompson was found in the room with the drugs, the spoons, and the syringes. Although proximity to drugs or items alone is not enough to support knowing possession, Thompson also knew where his pack of Pall Mall cigarettes was that contained the drugs, and he knew that the pack still had cigarettes in it.

{¶29} As testimony from a law enforcement officer indicated, cigarette packages are common places to hide drugs. *E.g. State v. Maffey*, 12th Dist. Clermont No. CA2020-08-045, 2021-Ohio-2460, ¶ 35 ("a cigarette pack [] [is] a common container to conceal drugs"); *State v. Cody*, 2d Dist. Montgomery No. 29219, 2022-Ohio-544, ¶ 16 (wherein drugs were found in a cigarette pack); *State v. Douglas*, 3d Dist. Marion No. 9-13-07, 2013-Ohio-4563, ¶ 39 (same). Moreover, an officer testified that the spoons had white residue and burn marks on them, which a jury could infer mean that the spoons were used in drug ingestion. We will not second-guess a jury's credibility determinations. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶30} In sum, we do not find that this is the exceptional case where a jury clearly lost its way or created a manifest miscarriage of justice by convicting Thompson of the crimes as indicted. Therefore, Thompson's second assignment of error is overruled.

*Third Assignment of Error*

{¶31} In his third assignment of error, Thompson argues that the trial court abused its discretion by admitting a photograph of the Pall Mall cigarette package into evidence.

Standard of Review

{¶32} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of that discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

Relevant Authority

{¶33} Thompson contends that the trial court's admission of a photograph of the Pall Mall cigarette package was in violation of Crim.R. 26, which reads as follows:

> **Physical property, other than contraband, as defined by statute, under the control of a Prosecuting Attorney for use as evidence in a hearing or trial should be returned to the owner at the earliest possible time. To facilitate the early return of such property, where appropriate, and by court order, photographs, as defined in Evid. R. 1001(2), may be taken of the property and introduced as evidence in the hearing or trial. The admission of such photographs is subject to the relevancy requirements of Evid. R. 401, Evid. R. 402, Evid. R. 403, the authentication requirements of Evid. R. 901, and the best evidence requirements of Evid. R. 1002.**

Analysis

{¶34} The Pall Mall cigarette package containing the bindle of fentanyl was not admitted into evidence in this case. In addition, the bindle of fentanyl itself, the spoons, and the syringes were not entered into evidence.

{¶35} Instead of introducing the cigarette box, the fentanyl, the spoons, and the syringes into evidence, the State introduced photographs of the cigarette box where the bindle of fentanyl was found, a photograph of the open cigarette box, photographs of the syringes where they were found, and photographs of the spoons where they were found. The State relied upon the photographs and the testimony of law enforcement officers to establish the convictions. Thompson argues that the introduction of photographs rather than the objects themselves violates Crim.R. 26.

{¶36} Notably, the Seventh District Court of Appeals analyzed the applicability of Crim.R. 26 in a trial when considering the substitution of a photograph for an item, and found the criminal rule to have little relevance.

> **The plain language of Crim.R. 26 appears to be designed to allow the state to present evidence of a *stolen* item without depriving the victim of that item, rather than imposing a requirement on the state to present certain evidence in order to support a conviction. In other words, if the state chooses to present evidence, it is not required to hold the physical item from the victim until a trial occurs. The state "may" take a photograph of the item and the photo "may" be introduced as evidence. This rule does not require either the item or a photo of the item be introduced as evidence in order to sustain a conviction. In fact, it appears there is no such rule.**

> **This conclusion is supported by caselaw from the Ohio Supreme Court,** *State v. Murphy,* **49 Ohio St.3d 206, 551 N.E.2d 932 (1990). The** *Murphy* **Court addressed whether a firearm, or some other type of physical evidence showing or describing the firearm, must be introduced at trial in order to prove its existence. The** *Murphy* **Court held that evidence of the firearm's existence was sufficiently proven through lay witness testimony.** *Id.* **at 209.**

(Emphasis added.) *State v. Armocida*, 7th Dist. Mahoning No. 18 MA 0015, 2020-Ohio-3621, ¶¶ 20-21.

{¶37} Similar to the Seventh District Court of Appeals, we do not find that Crim.R. 26 prevents the use of photographs and officer testimony to establish a conviction or that Crim.R. 26 requires items to be introduced into evidence rather than photographs of the items in order to sustain a conviction. Criminal Rule 26's purpose is to "provide[] for the return of physical property held by the state to the owner before trial." *Staff Notes* to Crim.R. 26 (1989). Thompson has provided no case law showing how Crim.R. 26 would compel a different result here, or how it has even been applied to circumstances like these.

{¶38} Furthermore, the general rule is that "A photograph is admissible in evidence if it is shown to be an accurate representation of what or whom it purports to represent." *State v. Hannah*, 54 Ohio St.2d 84, 88 (1978). Here, the photographs were identified by law enforcement and the photographs were indicated to be fair and accurate representations of how the items looked when they were found. Thus

the photographs would be readily admissible, or, at the very least, it would not have been an abuse of discretion to admit them.

{¶39} Moreover, we note that Thompson only objected to the introduction of *one* photograph at trial—a close-up photograph of the open cigarette pack where the drug bindle was not even visible. Thompson primarily objected to the photograph at trial because the police had taken cigarettes out of the package, rendering the package, in his opinion, altered. The trial court overruled this objection and admitted the photograph. We simply do not find that there was any abuse of discretion here even if it might be the "best practice" to introduce the specific items themselves into evidence.[4] For all of these reasons, Thompson's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶40} In his fourth assignment of error, Thompson argues that he received ineffective assistance of trial counsel.

Standard of Review

{¶41} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668,

---

[4] However, we note the inherent danger of items that have been in contact with fentanyl.

687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689; *State v. Harris*, 3d Dist. Allen No. 1-21-30, 2021-Ohio-4559, ¶ 6.

Analysis

**{¶42}** Thompson contends that his trial counsel was ineffective for failing to "prepare a motion to suppress" with regard to chain of custody of the bindle of fentanyl. More specifically, he contends that because officers testified that they removed two cigarettes from the Pall Mall cigarette box where the bindle of fentanyl was found, there were concerns about the propriety of the police handling the evidence.

**{¶43}** Thompson also argues that prejudice exists here because if a suppression motion had been granted, photographs and testimony about the cigarette package would not have been presented to the jury and there was a reasonable probability that the outcome would have been different.

**{¶44}** At the outset of our review, we note that failure to file a suppression motion does not constitute per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448. Notwithstanding this point, Ohio Appellate Courts have held that "it is well-established that a challenge to

the chain of custody is '*an issue not properly raised in a motion to suppress, rather properly raised in a motion in limine*.'" (Emphasis added.) *State v. Cyrek*, 12th Dist. Butler No. CA2019-02-037, 2019-Ohio-4515, ¶ 15, quoting *State v. Woltz*, 4th Dist. Athens No. 17CA20, 2017-Ohio-9042, ¶ 15. Stated differently, "[c]hallenges to the chain of custody are evidentiary and properly determined by the trial court with finality at trial – not at the suppression hearing." *Woltz* at ¶ 20; *State v. Stoll*, 5th Dist. Stark No. 1998CA00291, 1999WL 333348, at *3 (May 24, 1999) ("a motion to suppress is not the appropriate vehicle in which to attack a chain of custody issue.").

**{¶45}** Furthermore, where a reasonable chain of custody has been established, "breaks in the chain of custody *go to the weight of the evidence, not its admissibility*." (Emphasis added.) *State v. Howell*, 7th Dist. Mahoning No. 10-MA-148, 2012-Ohio-4349, ¶ 79; *State v. Ward*, 3d Dist. Seneca No. 13-10-11, 2011-Ohio-254, ¶ 33.

**{¶46}** In our review of the matter, we emphasize that even if trial counsel had filed a suppression motion in this matter—or, more properly, a motion in limine—there is no indication it would have been granted. The evidence presented at trial, and the only evidence we have in the record, indicates that a reasonable chain of custody was established with respect to the Pall Mall cigarette package and the bindle of fentanyl inside.

**{¶47}** An officer testified as to where he found the box of Pall Mall cigarettes after being asked to retrieve them for Thompson. He testified to opening the box and seeing the bindle inside along with the cigarettes. He testified he took two cigarettes out of the package and then he placed the whole pack of cigarettes into a sealed evidence bag. The officer wrote on the bag where the cigarette package was found and wrote it on the inventory log.

**{¶48}** After being collected, the bag was transferred to an evidence locker and placed in a specific spot related to this case. Thompson then stipulated at trial that the bindle found in the Pall Mall package contained .11 grams of fentanyl, obviating the need for expert testimony from BCI about the drug.

**{¶49}** Based on the evidence we have in the record, and Thompson's stipulation, we find that the State established a reasonable chain of custody, which means breaks in the chain would go to weight of the evidence rather than admissibility. *State v. Ward*, 3d Dist. Seneca No. 13-10-11, 2011-Ohio-254, ¶ 33.

**{¶50}** The "weight" issue would be for a jury to determine and in this case the jury was able to evaluate the issues raised with regard to the handling of the Pall Mall cigarette package and the bindle. In fact, during the trial, Thompson's attorney repeatedly emphasized that an officer "manipulated" the pack of cigarettes when he removed two cigarettes from it. The jury thus had the issue of "breaks" in the chain

of custody before it, considered the issue, and evidently rejected it or did not find it persuasive.

**{¶51}** In sum, we find no ineffective assistance of counsel on the record before us, and we do not find that there was a reasonable probability that the outcome of the trial would have been different based on any purported deficiencies of counsel. Therefore, Thompson's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶52}** In his fifth assignment of error, Thompson argues that the trial court erred by imposing an 11-month prison term in this matter. He argues that the prison term was inconsistent with the overriding purposes of felony sentencing under R.C. 2929.11.

Standard of Review

**{¶53}** Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

*Relevant Authority*

**{¶54}** The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing a maximum sentence, or more than a minimum sentence. *State v. Reed*, 3d Dist. Union No. 14-20-16, 2021-Ohio-1623, ¶ 13. Nevertheless, when exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense including those set forth in R.C. 2929.11 and R.C. 2929.12. *Id.*

**{¶55}** Revised Code 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). In order to comply with those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the offender's conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A)-(E).

Analysis

**{¶56}** In this case, Thompson was convicted of a fifth degree felony. At sentencing the trial court imposed an 11-month prison term after it indicated that it

considered the appropriate statutory factors in R.C. 2929.11 and R.C. 2929.12. When considering the statutory sentencing factors, the trial court specifically emphasized Thompson's criminal convictions, his history of numerous felonies going back to the 1970's, and his failure to respond to community control sanctions. The 11-month prison term that was imposed was within the appropriate statutory range pursuant to R.C. 2929.14(A)(5).

{¶57} In our review of the matter, we stress that under *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, and R.C. 2953.08(G)(2), this court has no authority to modify or vacate a sentence where the trial court has considered the appropriate sentencing statutes, the sentence is within the authorized sentencing range, and the sentence is not otherwise contrary to law. *See also Reed* at ¶ 19-20. In this case, the trial court explicitly considered the appropriate sentencing statutes, imposed a valid sentence within the appropriate statutory range, and Thompson has not demonstrated that his sentence was otherwise clearly and convincingly contrary to law. Therefore, Thompson's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶58} In his sixth assignment of error, Thompson argues that he was deprived of a fair trial by the cumulative effect of numerous errors in this trial.

{¶59} Under the cumulative-error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial

even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83. "To find cumulative error, a court must first find *multiple* errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." (Emphasis added.) *In re J.M.*, 3d Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

{¶60} Here, we have not found multiple errors in this case, therefore the cumulative error doctrine does not apply. Therefore, Thompson's sixth assignment of error is overruled.

*Conclusion*

{¶61} For the foregoing reasons, Thompson's assignments of error are overruled and the judgment and sentence of the Crawford County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**